Herschel J. SILKEY and Wanda Louise Silkey, Appellants–Plaintiffs,

v.

INVESTORS DIVERSIFIED SERVICES, INC., and Mark Powers, Appellees–Defendants.

No. 82A04–9707–CV–272.

Court of Appeals of Indiana.

Dec. 29, 1997.

Rehearing Denied Feb. 9, 1998.

Leslie C. Shively, Lee F. Baker, Fine & Hatfield, Evansville, for Appellants–Plaintiffs.

David V. Miller, Greg A. Granger, Bowers, Harrison, Kent & Miller, Evansville, for Appellees–Defendants.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants, Herschel J. Silkey and Wanda Louise Silkey (Silkeys), appeal from an order granting Appellees', Investors Diversified

Services, Inc.[1] (IDS) and Mark Powers (Powers) (collectively referred to as the Brokers), amended Motion to Enforce Mediation Agreement and Request for Sanctions.

We affirm.

## ISSUES

The Silkeys present two issues for our review which we restate as:

I. Whether the trial court erred in determining that an oral agreement reached during a mediation session was a final and binding agreement?

II. Whether the trial court erred in determining that the verbal agreement reached during a mediation session complied with the Indiana Statute of Frauds, Ind.Code § 32–2–1–1.

## FACTS AND PROCEDURAL HISTORY

In early 1983, the Silkeys received a capital gain of $650,000 from the sale of their farm land to a coal company. (R. 359–40). They sought investment assistance from Powers, who was a registered representative of IDS and possessed all the necessary securities licenses to qualify for that position. (R. 359). IDS is a securities dealer and brokerage firm with its principal offices located in Minneapolis, Minnesota, with an office located and doing business in Evansville, Indiana, and at other locations throughout the State of Indiana. (R. 359).

As a result of meetings and discussions, Powers recommended and the Silkeys purchased several investments, including a $100,000 investment in JMB Carlyle Real Estate Limited Partnership XII. This investment's performance did not meet the Silkeys' expectations, and on June 29, 1994, the Silkeys filed a complaint against IDS and Powers alleging misrepresentation, violations of the Indiana Securities Act,[2] breach of fiduciary duty, and constructive fraud. (R. 360).

On August 16, 1995, the trial court ordered the parties to mediation. (R. 360). Mediation was held in Evansville, Indiana on January 17, 1996, five days before the scheduled

trial date, with a mutually agreed-upon mediator. (R. 360–61). The mediator concluded the mediation with an oral recitation of the terms of the agreement and received verbal assent from all of the parties to the terms. This exchange was recorded on an audio tape. (R. 361). The tape was later transcribed by the mediator, and copies were sent to all parties. On January 18, 1996, the mediator filed with the trial court a Mediation Report which confirmed that a settlement had been reached, and the trial was removed from the court's calendar. (R. 361). On January 22, 1996, a typed transcription was sent to all parties by the mediator. (R. 361). On February 19, 1996, the Brokers forwarded to the Silkeys a Settlement Agreement and Mutual General Release (Agreement) which was prepared by counsel for the Brokers and signed by IDS and Powers. (R. 361, 374–379). After receiving the Agreement, the Silkeys refused to sign it, and the Silkeys' counsel informed the Brokers of the repudiation. (R. 362). Subsequently, the Silkeys' counsel withdrew their representation, and the Silkeys obtained new counsel.

The Brokers filed a Motion to Enforce Agreement for Settlement on August 23, 1996. The trial court found that this was not a case where the parties were disputing whether the document accurately reflected the agreement, but rather the Silkeys were attempting to repudiate the agreement. (R. 363). The trial court concluded that an enforceable agreement was reached by the parties. The trial court ruled that the audio tape recording was a legally binding form of the agreement which set forth with reasonable certainty the terms and conditions and the parties' agreement to these terms and conditions. The trial court then directed that the terms of the audio tape recording be reduced to writing and that, when the writing fairly and accurately reflected the terms of the agreement, the parties would sign and file the agreement with the court. (R. 366).

## DISCUSSION AND DECISION
### I. Effect of the Oral Agreement

The central question in this case is what effect, if any, should be given to the oral

---

**1.** The record indicates that the true name of the Appellees is IDS Financial Services, Inc. rather than the name captioned in the case. (R. 21).

**2.** Ind.Code §§ 23–2–1–12 and 23–2–1–19.

agreement reached by the parties at the conclusion of the mediation. The Silkeys argue that the Rules of Alternative Dispute Resolution [3] control the disposition of this question. The rules provide that:

> (2) If an agreement is reached, it shall be reduced to writing and signed. The agreement shall then be filed with the court. If the agreement is complete on all issues, it shall be accompanied by a joint stipulation of disposition.
>
> (3) After the agreement becomes an order of the court by joint stipulation, in the event of any breach or failure to perform under the agreement, the court, upon motion, may impose sanctions, including costs, interest, attorney fees, or other appropriate remedies including entry of judgment on the agreement.

A.D.R. 2.7(E) (1996).

The Silkeys acknowledge that an agreement was reached and that it was reduced to writing. Appellant's Brief at 20. They also acknowledge that they have rescinded their verbal assent to the terms of the agreement. *Id.* They argue that because this agreement was neither signed by them nor filed with the court, there was no contract or breach; therefore, they argue neither enforcement nor sanction is appropriate. *Id.* We disagree.

The Silkeys present their appeal as one of statutory interpretation; therefore, we begin with consideration of the A.D.R. rules. The Indiana Supreme Court has noted in the preamble to the A.D.R. rules that the rules were "adopted in order to bring some uniformity into alternative dispute resolution with the view that the interests of the parties can be preserved" in non-traditional settings. A.D.R. Preamble. Mediation is a process to "assist[ ] the litigants in reaching a mutually acceptable agreement." A.D.R. 2.1. Although a court may order parties to participate in mediation and require that participation be in good faith, it cannot order them to reach agreement. *Id.* The ultimate goal of mediation is to provide a forum in which parties might reach a mutually agreed reso-

lution to their differences. The A.D.R. rules provide a uniform *process* for negotiation, but they do not change the law regarding settlement agreements or their enforcement. Nothing in the text of the A.D.R. rules for mediation suggests the Indiana Supreme Court intended to change the trial court's role in enforcing settlement agreements. Thus, although the *process* of the mediation is controlled by the A.D.R. rules, the enforcement of any valid agreement is within the authority of the trial court under the existing law in Indiana.

"The judicial policy of Indiana strongly favors settlement agreements." *Germania v. Thermasol, Ltd.,* 569 N.E.2d 730, 732 (Ind.Ct.App.1991). Courts retain the inherent power to enforce agreements entered into in settlement of litigation which is pending before them. *Id.* Settlement is always referable to the action in the court, and the carrying out of the agreement should be controlled by that court. *Brant Construction Co. v. Lumen Construction Co.,* 515 N.E.2d 868, 876 (Ind.Ct.App.1987), *reh'g denied, trans. denied.* "Otherwise the compromise, instead of being an aid to litigation, would be only productive of litigation as a separate and additional impetus." *Id.* (quoting *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir.1976), *cert. denied, Allied Witan Co. v. Aro Corp.,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976)).

The Silkeys argue that because no written agreement was ever signed, no joint stipulation was ever entered, and therefore, no breach occurred which could allow the court to enforce the agreement. Appellant's Brief at 20 (arguing that A.D.R. 2.7(E)(2) requires a writing in order to be enforceable). The Silkeys misunderstand the rule. The text to which the Silkeys refer does, in fact, explain the manner in which the parties will present their agreement to the trial court in order to have it *transformed by the court* into an *order* of joint stipulation. This promotes judicial efficiency by assuring that the parties do not appear before the court in

---

**3.** The parties agree that the correct version of these rules to be considered is the 1996 version, which was in effect at the time of the mediation.

The Court notes that the section in consideration here has been amended in the 1997 version.

a later dispute over the same issue or action. Thus, the rule provides a uniform procedure by which parties dispose of an action in accordance with the terms of their agreement.

■ The Silkeys argue that they were never compelled to agree and so should not be held to an agreement about which they have changed their minds. Appellant's Brief at 20–21. Such a rule would clearly create a disincentive for settlement. Additionally, it would allow mediation to serve not as an aid to litigation, but as a separate and additional impetus for litigation. *See, Brant Construction Co.*, 515 N.E.2d at 876. Neither the A.D.R. rules nor the law support such an interpretation.

■ The Silkeys are correct that a party has full authority over whether to settle his case or proceed to trial. *Klebes v. Forest Lake Corp.*, 607 N.E.2d 978, 982 (Ind.Ct.App. 1993), *reh'g denied, trans. denied* (citing Ind. Professional Conduct Rule 1.2). Having decided to accept a settlement, however, the party is bound to that decision. "In the absence of fraud or mistake a settlement is as binding and conclusive of the parties' rights and obligations as a judgment on the merits." *Klebes*, 607 N.E.2d at 982. The Silkeys do not allege fraud or mistake in reaching this settlement agreement; in fact, they do not question the terms of the agreement at all.[4] Instead, they assert that they "no longer agree" to the terms of the settlement. Appellant's Brief at 21. This is not a sufficient ground to rescind a contract.

■ The Silkeys argue that the agreement was not final or binding because it is oral. A settlement agreement is not required to be in writing. *Klebes*, 607 N.E.2d at 982 (following *Indiana Farmers Mut. Ins. Co. v. Walters*, 221 Ind. 642, 50 N.E.2d 868 (1943)). *See also, International Shoe Co. v. Lacy*, 114 Ind.App. 641, 53 N.E.2d 636, 638 (1944) (holding that "where they assent to all of its terms, the mere reference to a future contract in writing will not negative the existence of a present and completed one"). Whether a party has consented to particular terms is a factual matter to be determined by the fact-finder. *Klebes*, 607 N.E.2d at 982 (citing *Brant Construction Co.*, 515 N.E.2d 868).

The trial court found that the terms of the agreement were not in dispute. (R. 363). In reaching this decision, it relied on the parties' affidavits, pleadings, and memoranda of law. (R. 359). At the hearing on the matter, the trial court admitted the tape recording of the recitation of agreement over the Silkeys' objection. (R. 399). It does not appear from the trial court's written findings that it relied on the tape recording of the agreement in reaching its decision, nor was it required to do so because neither the content nor the authenticity of the tape was in question. In fact, as noted, the Silkeys raise the issue that the agreement reached in the mediation was preliminary for the first time on appeal. Appellant's Brief at 22. Having failed to raise this issue before the trial court, it is waived. *Franklin Bank and Trust Co.*, 563 N.E.2d at 553.

■ The evidence before the trial court clearly supports its finding that the parties entered an agreement at the close of the mediation session. The trial court had available to it a tape and a transcript which clearly indicated the parties had agreed in substance to the terms of the mediation. The Silkeys did not argue to the trial court that there were any changes or defects in the terms as they were reduced to writing by the Brokers. "If a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agree-

---

4. In their brief, the Silkeys first assert that they agreed and then rescinded the agreement. Appellant's Brief at 19. Later in the brief, they argue that the terms did not constitute the entire agreement between the parties. Appellant's Brief at 22. Finally, in their reply brief, the Silkeys argue that "any agreement reached at or during the mediation session was preliminary, and, in any event, not complete on all issues."

Appellants' Reply Brief at 2. Because they raise the question of the incompleteness of the terms for the first time on appeal, they are waived. *See, Franklin Bank & Trust Co. v. Mithoefer*, 563 N.E.2d 551, 553 (Ind.1990) ("A party cannot change its theory and on appeal argue an issue which was not properly presented to the trial court").

ment." *Klebes,* 607 N.E.2d at 982. Having found that a settlement agreement had been reached, the trial court acted within its authority under the A.D.R. rules and the case law in Indiana in directing the parties to reduce their agreement to writing and sign and file it with the court.[5]

## II. Statute of Frauds

■ The second issue raised by the Silkeys is that the verbal agreement is not in compliance with the Statute of Frauds and is, thus, unenforceable. They make three arguments on this issue: first, that the terms did not constitute the entire agreement; second, that the audio tape is insufficient to meet the requirements of a writing in order to take the agreement outside the Statute of Frauds; and third, that the agreement cannot be performed within one year of its making. Appellant's Brief at 21–22.

The Statute of Frauds provides:

No action shall be brought in any of the following cases: ...

Fifth: Upon any agreement that is not to be performed within one (1) year from the making thereof ...

Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized ...

Ind.Code § 32–2–1–1. The Silkeys argue that the statute of frauds is applicable to this agreement due to the fact that it will not be performed within one year. They argue that this agreement will not be fully performed until January 31, 2001. However, the agreement is not this definite. The terms of the agreement guarantee that the Silkeys would receive an initial payment of cash immediately and a guarantee of a distribution of an additional fixed sum *on or before* January 31, 2001. If the investment pays a dividend equivalent to this additional sum before January 31, 2001, there is no further obligation on the part of the Brokers. The fact that this agreement *may not* be performed within one year is insufficient alone to make it subject to the requirements of the Statute of Frauds:

It must affirmatively appear by the terms of the contract, that its stipulations are not to be performed within a year after it is made, in order to bring it within the provisions of the statute of frauds. (sic) The Statute of Frauds has always been held to apply only to contracts which, *by the express stipulations of the parties,* were not to be performed within a year, and not to those which *might or might not,* upon a contingency, be performed within a year. The one year clause of the Statute of Frauds has no application to contracts which are *capable* of being performed within one year of the making thereof.

*Wior v. Anchor Industries, Inc.,* 641 N.E.2d 1275, 1278 (Ind.Ct.App.1994), *rev'd on other grounds,* 669 N.E.2d 172 (Ind.1996), *reh'g denied,* (emphasis added) (internal citations omitted); *Kiyose v. Trustees of Indiana Univ.,* 166 Ind.App. 34, 333 N.E.2d 886 (1975).

It is possible that the agreement could be fully performed within one year of its making if the underlying investment were to pay a distribution equal to or greater than the guarantee amount within the first year. There is no express stipulation between the parties that the agreement would not be performed within one year. Thus, the agreement falls outside the Statute of Frauds. Because the Statute of Frauds is not applicable to this settlement agreement due to the fact that it could be completed within one year, we need not address whether it meets

---

5. We note that neither the trial court nor this court will compel the Silkeys to terms which they have not agreed upon. The trial court's order that the parties reduce to writing the terms of their agreement and file it when it is a fair and accurate reflection of the terms agreed upon is consistent with the determination that an agreement was reached and recorded on the audio tape. Should there be a continued dispute over

the terms which were agreed upon, the trial court may present the question of agreement between the written and oral terms to a trier of fact for determination. *See, Ballew v. Town of Clarksville,* 683 N.E.2d 636, 639 (Ind.Ct.App. 1997) ("[T]he terms of a contract not reduced to writing are a matter to be interpreted by the trier of fact").

the other requirements of the Statute of Frauds.

## CONCLUSION

The trial court acted within its authority to enforce a settlement agreement in a case pending before it where the parties clearly agreed to the terms, but later attempted to rescind their assent. The oral settlement agreement is enforceable, and the parties may be ordered to reduce their agreement to writing and file it with the court. Additionally, because the oral agreement may be performed within one year and there is no express stipulation between the parties that it will not be performed, it is outside the Statute of Frauds.

Affirmed.

DARDEN and HOFFMAN, JJ., concur.