Kirk E. VERNON, and Martha Vernon, Appellants (Plaintiff),

v.

Adam J. ACTON, Appellee (Defendant).

No. 49S02–9809–CV–488.

Supreme Court of Indiana.

June 30, 2000.

Stephen Gerald Gray, Indianapolis, Indiana, Attorney for Appellants.

Bryce H. Bennett, Jr., Michael Patrick Dugan, Riley Bennett & Egloff, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, Justice

The plaintiff-appellants, Kirk and Martha Vernon, are appealing from a judg-

ment granting motions to enforce an oral pre-trial mediation settlement agreement and to impose attorney fees filed by the defendant-appellee, Adam Acton. Denying the existence of any agreement, the plaintiffs raised multiple issues on appeal. The Court of Appeals affirmed. *Vernon v. Acton*, 693 N.E.2d 1345 (Ind.Ct.App.1998). We granted transfer and requested additional briefing regarding issues related to the Indiana Rules for Alternative Dispute Resolution (A.D.R.Rules). We now reverse the trial court, concluding that the mediator's testimony regarding the alleged oral settlement agreement was confidential and privileged and that it was not admissible pursuant to the A.D.R. Rules incorporated in the parties' written agreement to mediate.

This case arises from an automobile collision involving vehicles driven by plaintiff Kirk Vernon and defendant Adam Acton. Prior to filing a complaint for damages, the plaintiffs and the defendant engaged in a voluntary pre-suit mediation pursuant to a written agreement establishing the terms and conditions of the mediation process. The defendant contends that the session produced an oral agreement to settle the plaintiffs' claims for $29,500.00. A few days after the mediation session, the defendant's insurance company issued a check and a release form to the plaintiffs. The plaintiffs returned both unsigned and promptly filed a complaint against the defendant alleging negligence and seeking damages for physical injuries and loss of consortium. In his answer, the defendant asserted various affirmative defenses and a counterclaim seeking damages for breach of the settlement agreement and attorney fees. Both parties timely filed demands for jury trial. Two months later, the defendant filed a "Motion to Enforce Settlement Agreement," along with a "Motion for Attorney's Fees."

The trial court heard evidence on the defendant's pre-trial motions and made the following determinations: that the plaintiff had accepted the defendant's settlement offer; that there was an oral agreement that the plaintiffs would execute a release of all claims in exchange for $29,500.00; that the defendant did not breach the confidentiality provisions of the Agreement to Mediate or the A.D.R. Rules by disclosing statements made during the mediation process; and that the defendant was entitled to $8,000.00 in attorney fees from the plaintiffs because the lawsuit was a frivolous, unreasonable, and groundless action in light of the settlement agreement.

The plaintiffs contend that, during the hearing on the defendant's pre-trial motions to enforce settlement agreement and for attorney fees, the trial court erroneously admitted evidence regarding the alleged settlement in contravention of the parties' mediation agreement, A.D.R. Rule 2.12,[1] and Indiana Evidence Rule 408. The defendant asserts that only the statements made during the mediation process *before* settlement were confidential. He argues that neither the parties' agreement, the A.D.R. Rules, nor the Evidence Rules prohibit evidence of an oral settlement agreement reached in mediation.

At the trial court evidentiary hearing, David Young, a claims representative for Farmers Insurance, the defendant's insurance company, testified regarding events that occurred on October 23, 1995, at the Indianapolis offices of National Alternative Dispute Resolution Services, Inc. Young; the mediator, Paul S. Petticrew; the plaintiffs; their attorney, Kirk A. Knoll; and his investigator, Clifford Somers, attended the mediation, held pursuant to a signed Agreement to Mediate. The mediation session lasted about three and one-third hours on a single day. Over the plaintiffs' objection, the trial court permitted Young to testify that, at the conclusion of the mediation session and while at the mediator's offices, "We agreed to settle the claim at $29,500." Record at 214. Young stated

---

1. Pursuant to amendment of December 23, 1996, effective March 1, 1997, the substance of this Rule 2.12 is now found in Rule 2.11 (1999).

that he delivered the settlement check and release to Somers a few days after the mediation session. Over repeated objections by plaintiffs' counsel, the mediator, Petticrew, testified that the parties reached agreement in separate rooms, after which he brought them together for the purpose of summarizing the terms of the agreement. Petticrew stated that "[t]he parties had reached an agreement of $29,500 in full and final satisfaction of the claims" and that "the parties agreed that the adjustor was to deliver a check for $29,500 along with a release to the claimants' attorney's office." Record at 305–06. At no time did Petticrew prepare or submit a written version of the agreement to the parties to be signed. However, five months later, on March 18, 1996, in response to a request from Young, Petticrew issued a written report on the mediation, stating in part: "After three and one third hours of negotiation through the pre-litigation mediation process, the parties reached an agreement for a full and final settlement of claimants' claims for twenty-nine thousand five hundred dollars ($29,-500.00)." Record at 276.

In response to the trial court overruling the plaintiffs' objections and admitting evidence of the existence of an alleged oral settlement agreement, plaintiff Kirk Vernon testified that, when he left the meeting with the mediator, he did not believe that he had entered into a binding agreement. Sowers, the investigator for the plaintiffs'

attorney, testified that, at the time of leaving the mediator's office, an offer had been extended but the plaintiffs had unresolved questions regarding whether they had to pay back their medical insurance carrier. To establish their contention that there was no meeting of the minds, the plaintiffs also attempted to present testimony during the hearing regarding statements and events during the portion of the mediation session that preceded the mediator's summary, but the trial court sustained the defendant's objections to this testimony. The plaintiffs contend that the trial court's decision had the effect of allowing the parties to testify as to the legal conclusion that an agreement had been reached but excluded evidence of the facts relevant to whether the alleged agreement existed.

The trial court ruled that it could hear evidence that an agreement was reached, but that A.D.R. Rule 2.12 prevented it from receiving evidence of "what went on during the mediation process."[2] Record at 228. The Court of Appeals upheld the trial court's judgment, based upon Indiana Evidence Rules 402 and 408 and its view that the confidentiality provisions in the parties' written agreement to mediate could not supersede the Rules of Evidence. *Vernon*, 693 N.E.2d at 1348–50.

■ This mediation was entered into pursuant to a written Agreement to Mediate.[3] The agreement required confiden-

---

2. The trial court explained its ruling as follows: "The Court may hear evidence that there was an agreement reached and I have received that. What negotiations and so on that went into it, I may not under these rules receive that evidence." Record at 226. Further, "[n]ow, under 2.12, I'm not permitted to receive information on what went on during the mediation process. So I've got the very difficult problem that I can see the footprint but I can't be told what happened when the footprint was being made." Record at 228.

3. The Agreement to Mediate was not admitted into evidence at the trial court's hearing on the defendant's motions, but it is in the Record as Exhibit A to the Plaintiffs' Reply to Counterclaim; Demand for Jury Trial. Rec-

ord at 30–37. This agreement included the following provisions regarding confidentiality:
2.1 The mediation process is confidential. All parties expressly understand and agree that any statements made during the mediation process by either party about any matter shall be considered confidential, in conformity with State law and Supreme Court Rules.
Further, all parties understand and agree that insofar as the mediation process is directed towards the settlement of issues which might otherwise be the subject of litigation, statements made by either party during the process are intended to be taken as being in furtherance of settlement and, therefore, not admissible as evidence in court.

tiality in conformity with state law and Supreme Court Rules.[4] Both parties claim that by their Agreement to Mediate they intended to be governed by the A.D.R. Rules. They dispute the scope, but not the applicability, of the A.D.R. mediation confidentiality rule. Each party presented arguments both to the trial court and to the Court of Appeals based on the A.D.R. Rules. The trial court's decision was grounded solely upon the A.D.R. Rules. We note that the A.D.R. Rules would not have otherwise applied to this pre-suit mediation,[5] *see Anderson v. Yorktown Classroom Teachers Ass'n,* 677 N.E.2d 540, 542 (Ind.Ct.App.1997). However, because each of the parties intended to be governed by the A.D.R. mediation confidentiality rule, and to guide the bench and bar, we will analyze the mediation in this case as governed by the A.D.R. Rules.

At the time of the mediation in this case, the Indiana A.D.R. Rules provided in pertinent part:

### RULE 2.12 CONFIDENTIALITY

Mediation shall be regarded as settlement negotiations. Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. *Evidence of conduct or statements made in the course of mediation is likewise not admissible.* This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of the mediation process. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, or negating a contention of undue delay. Mediation meetings shall be closed to all persons other than the parties of record, their legal representatives, and other invited persons. *Mediators shall not be subject to process requiring the disclosure of any matter discussed during the mediation, but rather, such matter shall be considered confidential and privileged in nature. The confidentiality requirement may not be waived by the parties, and an objection to the obtaining of testimony or physical evidence from mediation may be made by any party or by the mediators.*

A.D.R. 2.12 (1995) (emphasis added).

This rule provides for confidentiality in mediation to the extent provided for in other settlement negotiations. This remained so when we revised and renumbered the rule as A.D.R. Rule 2.11 in December of 1996 (effective March 1, 1997), modifying it to read: "Mediation instituted pursuant to judicial action in a pending case. Although not in effect at the time of the mediation in the present case, this Court has since expressly recommended the Pre–Suit Mediation Guidelines developed by the Indiana State Bar Association. A.D.R. Guideline 8 (adopted Dec. 4, 1998, effective Jan. 1, 1999). The Pre–Suit Guideline suggests that the parties should, by private agreement, protect the confidentiality of the presuit mediation process in accordance with the A.D.R. Rules. A.D.R. Guideline 8.4 & Form B(5). Strongly favoring the amicable resolution of disputes without resort to litigation, this Court encourages the use of mediation and other amicable settlement techniques and procedures.

---

Further, in signing this Agreement, all parties understand and agree to be foreclosed and barred from: telling any statement made by the other party; requesting the production of any notes, documents, or tapes made in mediation; or, requesting the testimony of the mediator with regard to any part of the mediation process in Court or any other legal process.
Record at 36–37.

4. Supplemental Brief of Appellants at 3–4; Appellee's Supplemental Brief on A.D.R. Rules at 7.

5. The A.D.R. Rules apply only to "all civil and domestic relations litigation filed" in Indiana trial courts, subject to certain exceptions not relevant to this case. A.D.R. 1.4. By their terms, they do not apply to a mediation not

shall be regarded as settlement negotiations as governed by Ind. Evidence Rule 408," the language of which we specifically set forth in this A.D.R. Rule. Likewise, this evidence rule has, from the time of its adoption in 1994, provided: "Compromise negotiations encompass alternative dispute resolution." Ind. Evid. R. 408. Although the mediation confidentiality rule declares that "[e]vidence of conduct or statements made in the course of mediation is likewise not admissible," the rule also provides:

> This rule does not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of the mediation process. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, or negating a contention of undue delay.

A.D.R. 2.12 (1995). Evidence Rule 408 contains a parallel provision.

■■■ We note that, in general, settlement agreements need not be in writing to be enforceable. *Ind. Farmers Mut. Ins. Co. v. Walters,* 221 Ind. 642, 646, 50 N.E.2d 868, 869 (1943); *Klebes v. Forest Lake Corp.,* 607 N.E.2d 978, 982 (Ind.Ct. App.1993). However, when a settlement agreement is reached in mediation, the mediation rules required that "it shall be reduced to writing and signed." A.D.R. 2.7(E)(2).[6] In *Silkey v. Investors Diversified Serv., Inc.,* 690 N.E.2d 329 (Ind.Ct. App.1997), the Court of Appeals confronted the issue of "what effect, if any, should be given to the oral agreement reached by the parties at the conclusion of a mediation." *Id.* at 331–32. Unlike the present case, the parties in *Silkey* agreed that an agreement was reached, and the claim pre-

sented was whether the agreement was enforceable even though it was not signed. Noting that the terms of the agreement were not in dispute, the Court of Appeals held that the trial court acted properly in ordering the parties to reduce their agreement to writing and to file it with the court. *Id.* at 334. The *Silkey* court did not address the admissibility of evidence to establish the existence and terms of an alleged oral mediation settlement agreement.

Because of the nature of the mediation process and its significant and increasing role, considerable attention has been given to whether claims of oral mediation settlement agreements should be enforceable. We note that the March 2000 discussion draft of a proposed Uniform Mediation Act under consideration by the National Conference of Commissioners on Uniform State Laws provides that "a record of an agreement between two or more disputants" shall not be protected by privilege or prohibition against disclosure, Section 8(a)(1), and the Reporter's Notes provide the following thoughtful explanation:

> This exception is noteworthy only for what is not included: oral agreements. The disadvantage of exempting oral settlements is that nearly everything said during a mediation session could bear on either whether the disputants came to an agreement or the content of the agreement. In other words, an exception for oral agreements has the potential to swallow the rule. As a result, mediation participants might be less candid, not knowing whether a controversy later would erupt over an oral agreement. Unfortunately, excluding evidence of oral settlements reached

---

**6.** At the time of the mediation, A.D.R. 2.7(E)(2) stated: "If an agreement is reached, it shall be reduced to writing and signed. The agreement shall then be filed with the court. If the agreement is complete on all issues, it shall be accompanied by a joint stipulation of disposition." Amendments to this subsection adopted December 23, 1996, effective March 1, 1997, added the phrase "and signed by the parties and their counsel" to the end of the first sentence and the phrase "In domestic relations matters" to the beginning of the second sentence. Similarly, A.D.R. Guideline 8.8 states: "If an agreement to settlement is reached, it should be reduced to writing promptly and a copy provided to all parties."

during a mediation session would operate to the disadvantage of a less legally-sophisticated disputant who is accustomed to the enforcement of oral settlements reached in negotiations. Such a person might also mistakenly assume the admissibility of evidence of oral settlements reached in mediation as well. However, because the majority of courts and statutes limit the confidentiality exception to signed written agreements, one would expect that mediators and others will soon incorporate knowledge of a writing requirement into their practices. *See Ryan v. Garcia,* 27 Cal. App.4th 1006, 33 Cal.Rptr.2d 158 (1994) (privilege statute precluded evidence of oral agreement); *Hudson v. Hudson,* 600 So.2d 7 (Fla.App.1992) (privilege statute precluded evidence of oral settlement); *Cohen v. Cohen,* 609 So.2d 783 [785] (Fla.App.1992) (same); Ohio Rev. Code § 2317.02–03 (Baldwin 1998).

Nat'l Conf. of Comm'rs on Unif. State Laws, Uniform Mediation Act, Draft Report, Section 8, Reporter's Note 2, Subsecsection 8(a)(1), Record of an Agreement (Mar. 2000) <http://www.law.upenn.edu/bll/ulc/ulc_frame.htm>.

We agree with this approach. Notwithstanding the importance of ensuring the enforceability of agreements that result from mediation, other goals are also important, including: facilitating agreements that result from mutual assent, achieving complete resolution of disputes, and producing clear understandings that the parties are less likely to dispute or challenge. These objectives are fostered by disfavoring oral agreements, about which the parties are more likely to have misunderstandings and disagreements. Requiring written agreements, signed by the parties, is more likely to maintain mediation as a viable avenue for clear and enduring dispute resolution rather than one leading to further uncertainty and conflict. Once the full assent of the parties is memorialized in a signed written agreement, the important goal of enforceability is achieved. We decline to find that the enforcement of oral mediation agreements is a sufficient ground to satisfy the "offered for another purpose" exception to the confidentiality rule and Evidence Rule 408.

We therefore hold that the mediation confidentiality provisions of our A.D.R. Rules[7] extend to and include oral settlement agreements undertaken or reached in mediation. Until reduced to writing and signed by the parties, mediation settlement agreements must be considered as compromise settlement negotiations under the applicable A.D.R. Rules and Evidence Rule 408.[8]

Having previously granted transfer, thereby vacating the opinion of the Court of Appeals, we now reverse the judgment of the trial court and remand this cause for a jury trial.

SHEPARD, C.J., SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

7. A.D.R. 2.12 (1995), and A.D.R. 2.11 (1997).

8. To the extent that *Silkey,* 690 N.E.2d 329, holds to the contrary, it is disapproved.