**Kimberly A. (Haler) RENO,
Appellant–Respondent,**

v.

**Jeffrey T. HALER, Appellee–Petitioner.**

**No. 70A03–9912–CV–459.**

Court of Appeals of Indiana.

Sept. 13, 2000.

---

David W. Stone IV, Anderson, Indiana, Attorney for Appellant.

William B. Keaton, Keaton and Keaton, P.C., Rushville, Indiana, Attorney for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Kimberly (Haler) Reno (Wife), appeals from the trial court's order accepting and incorporating a mediated agreement in the decree of dissolution. In an alternative argument, Wife claims that the trial court erred by awarding physical custody of the parties' child (Child) to Jeffery T. Haler (Husband) if Wife moved more than fifty miles from Rushville, Indiana.

We affirm.

The parties were married on June 17, 1989, and had one child born on April 30, 1992. On June 18, 1999, Husband filed a petition for dissolution. The case was set for mediation. During mediation on September 21, 1999, the parties attempted to settle matters, including the issue of child custody. Thereafter, the parties signed the mediator's handwritten notes of the agreement which included the term "joint custody." Record at 203. Before the parties signed, the mediator explained the terms of the agreement to both parties and their attorneys. The mediator subsequently typed a detailed copy of what the parties had agreed to. With regard to custody, the agreement provided for joint legal custody of the Child. It also provided that Wife was to have physical custody of the Child during the school year, with visitation rights to Husband, and that Husband was to have physical custody of the Child during the summer school break, with visitation rights to Wife. However, Wife refused to sign the typewritten agreement. The mediator then attached the typed Mediated Agreement and Parenting Plan to the Report Of The Mediator and filed it with the trial court on October 20, 1999.

Two days later, Wife filed a notice of her intent to move her residence to Pennsylvania. On October 25, 1999, Husband filed a motion to enforce the agreement, modify custody, and for sanctions. The same day, the trial court entered an order which accepted the report of the mediator and the attached unsigned agreement. On November 8, 1999, Wife filed a motion to dismiss Husband's motion to enforce the agreement. Wife later filed a second motion to dismiss Husband's motion to enforce the agreement along with a motion to

set aside the agreement. In these motions, filed on November 12, 1999, Wife for the first time claimed that she had repudiated the agreement.[1] On November 16 and 17, 1999, the trial court held hearings regarding the validity of the agreement and modification of custody and visitation.

On November 17, 1999, the trial court entered a summary decree of dissolution, wherein the court approved the mediated agreement, which awarded the parties joint legal custody of the Child, and granted physical custody of the Child to Wife during the school year and to husband during the summer break. The trial court then entered an order on the other pending motions, including Wife's notice of intent to change residence. In its findings of facts and conclusions of law, the trial court found that it was in the best interest of the Child to remain in Rush County and not move to Pennsylvania. The trial court's order also stated "that in the event mother moves more than fifty (50) miles from the City of Rushville, Indiana, the Parenting Plan shall be reversed; and father shall become the primary caretaker of the child ..." Record at 104. Wife then moved to Pennsylvania.[2]

Wife first contends that it was error for the trial court to accept the typewritten Report Of The Mediator because it contained a Mediated Agreement and Parenting Plan which had not been signed by either party. Although Wife concedes that an agreement was reached during mediation, she contends the terms she agreed to, namely sole custody of the Child with visitation for Husband, were not included in the subsequent typewritten agreement. Thus, Wife contends she is not bound by the typewritten agreement and that she timely repudiated the agreement as filed with the trial court.

First, Wife claims the trial court failed to follow the Indiana Rules of Alternative Dispute Resolution which state in part:

> "(2) If an agreement is reached, in whole or in part, *it shall be reduced to writing and signed by the parties and their counsel.* In domestic relations matters, the agreement shall then be filed with the court. If the agreement is complete on all issues, a joint stipulation of disposition shall be filed with the court. In all other matters, the agreement shall be filed with the court only by agreement of the parties."

Ind. Alternative Dispute Resolution Rule 2.7(E)(2) (Burns Code Ed.2000) (emphasis supplied).

■ A recent case from the Indiana Supreme Court, *Vernon v. Acton* (2000) Ind., 732 N.E.2d 805, dealt with the issue of the validity of mediated settlement agreements. In *Vernon,* plaintiffs entered into mediation with defendant after an automobile collision. Defendant claimed that an oral settlement agreement had been reached during the mediation, and plaintiffs claimed no such agreement had been made. Over plaintiffs' objection, the trial court heard testimony that an oral agreement had been reached during mediation. In determining that allowing this evidence violated the confidentiality requirements of the alternative dispute resolution rules,[3] our Supreme Court held:

> "Requiring written agreements, signed by the parties, is more likely to maintain mediation as a viable avenue for clear and enduring dispute resolution rather than one leading to further uncertainty and conflict. Once the full assent of the parties is memorialized in a signed written agreement, the important goal of enforceability is achieved."

1. It is unclear from the record as to when wife first refused to sign the typed agreement.

2. While it is apparent that Wife has moved to Pennsylvania, the record is unclear as to when Wife moved. The trial court found in its order that Wife intended to move immediately following the proceedings. Wife does not state when she moved, but Appellee's Brief states that Wife moved on or about December 3, 1999.

3. A.D.R. 2.12 (1995), and A.D.R. 2.11 (1997).

*Id.* at 810. Thus, in order for a mediated settlement to be enforced, it must be reduced to writing and signed by both parties and their attorneys. ,

■ Here, neither party signed the typewritten agreement filed with the trial court. However, unlike the litigants in *Vernon*, both parties and their attorneys signed the mediator's handwritten notes of the agreement after the mediator and all parties fully reviewed the terms. This is sufficient to comply with A.D.R. 2.7(E). Therefore, insofar as the terms of the handwritten notes signed by the parties conform to the terms of the typewritten agreement filed with the trial court, the agreement is enforceable.

Still, Wife asserts that the agreement filed with the trial court contains terms not found in the handwritten notes, and therefore, she is not bound by the additional terms. Specifically, Wife contends that she never agreed to joint custody of the Child or to provisions requiring her to notify Husband in the event of injury or illness to the Child.

■ Although the handwritten notes signed by the parties are in a very rough form, they do contain the terms to which the parties agreed. At the top of the first page of the notes are the words "joint custody" written in large print and underlined. Record at 203. Therefore, Wife is bound by her agreement to joint custody of the Child with Husband.

■ Wife is also bound by the provision in the agreement filed with the trial court which provides "[i]n the event of a serious injury to or illness of the child, the parent with whom the child may then be staying shall notify the other parent ..." Record at 227. The statutory definition of joint legal custody contemplates sharing authority concerning the Child's health care. In particular, joint legal custody of a child is defined as follows:

" 'Joint legal custody', for purposes of IC 31–17–2–13, IC 31–17–2–14, and IC 31–17–2–15, means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, *health care,* and religious training."

I.C. 31–9–2–67 (Burns Code Ed. Repl. 1997) (emphasis added). The provisions to which Wife now objects are consistent with Indiana's definition of joint legal custody, to which Wife agreed by signing the handwritten notes. Finally, Wife contends she does not remember agreeing to joint custody but only to . sole custody. A.D.R. 2.7(A)(3) requires the mediator to ensure that the parties understand the consequences of any decision they reach concerning children. There is no evidence that the mediator failed in that duty. Thus, Wife was bound. by the terms of the agreement which granted Husband and Wife joint custody and which required Wife to notify Husband in the event of the Child's injury or illness.

■ Wife also contends that the trial court erred when it accepted the agreement without any determination that the custody settlement was in the best interest of the child. Pursuant to A.D.R. 2.11, mediation "shall be regarded as settlement negotiations." Indiana Code 31–15–2–17 states in part:

"(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their. marriage, the parties may agree in writing to provisions for:

(1) the maintenance of either of the parties;

(2) the disposition of any property owned by either or both of the parties; and

(3) *the custody and support of the children of the parties.*

(b) In an action for dissolution of marriage:

(1) the terms of the agreement, *if approved by the court,* shall be incorporated and merged into the decree and the parties shall be ordered to perform the terms; or

(2) the court may make provisions for:

(A) the disposition of property;

(B) *child support*;

(C) maintenance; and

(D) *custody*;

as provided in this title."

I.C. 31–15–2–17 (Burns Code Ed. Repl. 1997) (emphasis added). Although the wishes of the parents are to be given great weight, it is the duty of the trial court to determine if the settlement agreed to by the parents is in the best interest of the child. *Keen v. Keen* (1994) Ind.App., 629 N.E.2d 938, 940. No agreement between parties affecting custody automatically binds the trial court. *Id.*

█ Thus, although it is the policy of the State to encourage parties to settle their own affairs, "agreements pertaining to the support and custody of children are of a different character and will not be deemed effective unless, and until, they are approved by the court." *In re Paternity of K.J.L.* (2000) Ind.App., 725 N.E.2d 155, 159. Here, the trial court accepted the Report Of The Mediator and the attached Mediated Agreement and Parenting Plan without specifically stating that it was in the best interest of the child.[4] Wife asserts that this was error. However, after the hearings at which the signed notes were presented, the trial court approved of the agreement, and found "that the terms of said agreement are fair, reasonable and proper". Record at 100. Also, the trial court acknowledged in its order that it was not bound by the custody terms in the settlement agreement when it stated, "[t]he Court CONCLUDES that the parties reached an agreement and that the ADR Rules provide that the Court *may* enforce the agreement by entering judgment thereon." Record at 103 (emphasis

supplied). While the trial court did not make a specific finding regarding the best interest of the child, it is evident that the trial court fully reviewed the terms of the agreement in that context before approving it.[5]

Next, Wife asserts that the trial court erred in accepting the mediated agreement because she purportedly repudiated it prior to the trial court's acceptance. In support of her contention, Wife relies upon *In re Paternity of K.J.L.*, supra 725 N.E.2d 155. In that case, this court held that it was error for a trial court to accept a non-mediated oral custody agreement between the mother and father which the mother had repudiated prior to trial court approval. The *K.J.L.* court noted that the mother in that case had "unequivocally repudiated the agreement prior to the trial court's approval of it ..." *Id.* at 158. Wife claims that, similar to the mother in *K.J.L.*, she gave the trial court notice of her repudiation prior to the court's approval of the agreement by filing her Notice Of Intent To Move Residence on October 22, 1999. Wife argues that "[a]ssuming there was a complete mediated agreement, when one party to such agreement, the custodial parent, announces an intent to move several hundred miles away, such announcement effectively repudiated the agreement..." Reply Brief of Appellant at 2.

Initially, we note that Wife's Notice Of Intent To Move Residence contained no indication that Wife was unequivocally repudiating the agreement. Instead, as mandated by statute, it merely notified the trial court of Wife's intent to move with the Child outside of Indiana.[6] Additionally, our case can be distinguished from *K.J.L.* because, unlike the parties there,

---

4. However, the trial court did note the agreement was "proper and should be accepted as submitted." Record at 73.

5. We note, however, that it was not proper for the trial court to have accepted the typed *unsigned* agreement on October 25, 1999. That document did not comply with A.D.R. 2.7 requiring a signed written agreement to

be filed with the trial court. Nor did the trial court at that time have before it the signed notes of the agreement. This is of no consequence, however, because the trial court later approved the settlement after it was presented with the signed notes of the agreement.

6. See I.C. 31–17–2–23 (Burns Code Ed. Repl. 1997).

Husband and Wife entered into a *written* mediated agreement before Wife unequivocally repudiated on November 12, 1999 in her motion to set aside the agreement. While we acknowledge that the trial court had the power to reject the parties' agreement if it was not in the best interest of the Child, *In re Paternity of K.J.L., supra* 725 N.E.2d at 158, if written mediated agreements are to mean anything, they should be given due consideration even if the trial court has not yet approved them.

■ In *Gabriel v. Gabriel* (1995) Ind. App., 654 N.E.2d 894, 898, *trans. denied,* this court held that parties to a signed written property settlement agreement do not have an absolute right to repudiate. Relying on a prior version of I.C. 31-15-2-17,[7] the *Gabriel* court noted that conferring upon parties an absolute right to repudiate a written agreement prior to court approval would thwart the public policy of favoring amicable settlement of disputes. *Id.* The *Gabriel* court further held that while a party is still free to challenge an agreement at a hearing "by establishing the existence of 'some unfairness, unreasonableness, manifest inequity in the terms of the agreement, or that the execution of the agreement was procured through fraud, misrepresentation, coercion, duress, or lack of full disclosure.'" *Id.* (quoting *Stockton v. Stockton* (1982), Ind.App., 435 N.E.2d 586, 589), absent such evidence, the written agreement will be upheld. We believe the same is applicable to settlement agreements involving child custody and visitation.

■ Here, Wife did challenge the validity of the agreement in her motion to set aside the agreement. After hearings on this and other motions, the trial court noted that the terms of the agreement were "fair, reasonable and proper." Record at 100. Therefore, although the trial court was not bound to accept the custody provisions of the settlement agreement, Wife

was bound by the terms to which she had agreed in the signed notes and was not permitted to repudiate them prior to the trial court's approval merely because she had changed her mind.

■ Finally, Wife contends that, even if the agreement were valid, the visitation provisions in the trial court's order constitute an abuse of discretion. As per the trial court's order, Wife succeeded to the rights and obligations originally specified for Husband when she moved to Pennsylvania. The visitation provisions called for the parent not having physical custody to have visitation on alternating weekends and every other Wednesday evening. Since Wife's move to Pennsylvania, Husband has had physical custody during the school year, and Wife has had physical custody during the summer school break. By imposing upon her the visitation scheme originally designed for a father living in Indiana, Wife claims the trial court abused its discretion.

■ Upon review of a trial court's determination of a visitation issue, we reverse only when the trial court manifestly abuses its discretion. *Marlow v. Marlow* (1998) Ind.App., 702 N.E.2d 733, 735, *trans. denied.* No abuse of discretion occurs if there is a rational basis in the record supporting the trial court's determination. *Id.* We will not reweigh evidence or judge the credibility of witnesses. *Id.*

Although the visitation schedule ordered by the trial court, permitting Wife to visit with the child during the school year, is made more difficult and expensive because of Wife's current residence, reasonably frequent visitation is not precluded. Wife is the physical custodian of the Child throughout the summer school vacation. Because of this, we cannot say the trial court abused its discretion.[8]

---

7. I.C. 31-1-11.5-10 (Burns Code Ed.1988).

8. Wife is entitled to petition the trial court for a modification of the visitation plan, but the present provisions, although perhaps not the most ideal arrangement, are not unreasonable.

In summary, it was not error for the trial court to approve the typewritten agreement in its decree of dissolution because the parties had signed the handwritten notes in compliance with the A.D.R. rules. Nor did the trial court ignore its duty to determine whether the agreement was in the best interest of the Child. Wife failed to timely repudiate the agreement, and the trial court did not abuse its discretion in the visitation order.

The orders of the trial court are affirmed.

BAILEY, J., and VAIDIK, J., concur.