Kimberly A. (Haler) RENO,
Appellant–Respondent,

v.

Jeffrey T. HALER, Appellee–Petitioner.

No. 70A03–9912–CV–459.

Court of Appeals of Indiana.

Jan. 31, 2001.

David W. Stone, IV, Anderson, IN, Attorney for Appellant.

William B. Keaton, Keaton and Keaton, P.C., Rushville, IN, Attorney for Appellee.

## OPINION UPON PETITION FOR REHEARING

SULLIVAN, Judge.

Appellant, Kimberly Haler (Wife), has filed a Petition for Rehearing, asserting several errors in our opinion in *Reno v. Haler* (2000) Ind.App., 734 N.E.2d 1095. In *Reno*, we held that the terms of a mediated divorce settlement agreement were enforceable to the extent that the mediator's handwritten notes of the agreement, signed by the parties, conformed to the terms of an unsigned typewritten agreement filed with the trial court. *Id.* at 1099. We issue this opinion upon rehearing for the purpose of clarification with regard to the issues complained of.

Wife first claims that our opinion materially misstated the record by stating, "However, after the hearings at which the signed notes were presented, the trial court approved of the agreement, and found 'that the terms of said agreement are fair, reasonable and proper'. Record at 100." *Reno, supra,* 734 N.E.2d at 1100. Upon rehearing, Wife claims that the trial court initially approved the agreement prior to the presentation of any evidence, including the signed, handwritten notes. We acknowledged this in footnote 5 of our opinion where we noted that the unsigned agreement did not comply with Ind. Alternative Dispute Resolution Rule 2.7. *Id.* at 1100 n. 5. On October 25, 1999, the trial court approved of the typed, unsigned agreement without any evidence before it.

Thus, Wife claims that she never had an opportunity to present her evidence as to the alleged invalidity of the agreement before it was approved. However, at that point, there was no indication of a disagreement over the validity of the agreement. Wife claims that the trial court "then affirmed that approval following the presentation of argument by the attorneys for the parties. This approval and reapproval took place before any evidence, including the signed notes, had been heard or seen by the trial court." Brief in Support of Petition for Rehearing at 1. The record reflects otherwise.

At a hearing on Husband's motion to enforce the agreement, held on November 16, 1999, the signed, handwritten notes were introduced into evidence without objection. The re-approval Wife cites to in the record occurred on November 17, 1999. Thus, the trial court had seen the signed notes the day *before* it re-approved the agreement. Furthermore, on November 22, 1999, the trial court, in its Order on Pending Motions, again re-approved the agreement. Thus, the trial court twice re-approved the agreement *after* it had seen the signed notes.

Nevertheless, Wife states, "The fact that the written order was not prepared at the moment the reapproval of the typed agreement occurred does not alter the fact the decision had already been made before the trial court saw the handwritten notes." Brief in Support of Petition for Rehearing at 1. If by this argument, Wife is claiming that there was no evidence before the trial court when it re-approved the agreement, then her assertion is clearly not supported by the record. Wife appears to claim that the trial court's premature approval of the typed, unsigned agreement somehow tainted its subsequent re-approval. We do not view this argument to be established by Wife. The crucial and controlling fact is that the trial court had before it evidence of the signed, handwritten agreement at the time the final dissolution decree was entered.

Next, Wife complains that the typewritten agreement contained many provisions which were not present in the signed notes. We addressed this issue in our earlier opinion when we stated, "insofar as the terms of the handwritten notes signed by the parties conform to the terms of the typewritten agreement filed with the trial court, the agreement is enforceable." *Reno, supra*, 734 N.E.2d at 1099. In our opinion, we held that the terms of the agreement complained of by Wife were consistent with the signed notes. *See id.* (holding that provisions concerning joint custody and healthcare of the parties' child were consistent with the signed notes).

Still, Wife claims that the existence of additional terms should render the entire agreement invalid. In support of her contention, Wife cites *Joiner v. Joiner* (1999) Miss.App., 739 So.2d 1043. In *Joiner*, the parties to a divorce proceeding signed their attorneys' handwritten notes taken at a non-mediated settlement conference, but when the agreement was distilled to a typed agreement, the wife refused to sign. *Id.* at 1044. The trial court in *Joiner* approved the agreement, but the Mississippi Court of Appeals reversed, citing a requirement in the Mississippi divorce statute that parties seeking a divorce on the grounds of irreconcilable differences enter into a "written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties...." *Id.* at 1045 (quoting Miss.Code Ann. 93-5-2(2)). In the opinion of the *Joiner* court, the signed notes did not meet this statutory requirement. *Id.* That an appellate decision from a different jurisdiction appears to have reached a contrary conclusion based upon somewhat similar facts does not prompt us to retreat from our position in this case.

Next, Wife insists, as she did upon appeal, that the term "joint custody" as it appeared in the signed, handwritten notes is insufficient to indicate that she agreed to a joint custody provision. This contention was also addressed in our earlier opinion. However, upon rehearing, Wife points to another portion of the handwritten notes which she claims is inconsistent with an agreement of joint legal custody. On the second page of the handwritten notes, the mediator wrote, "Purposes for interpreting Henry guidelines [1] She's custodial." Record at 204. Referring to Wife as the "custodial" parent is not inconsistent with the agreement of joint legal custody. As per the typed agreement, Wife was to be the primary physical custodian of the child, and only when she moved to Pennsylvania did she lose her status as primary physical custodian. *See Reno, supra*, 734 N.E.2d at 1098. Physical custody and legal custody are not equivalent. *See* I.C. 31-17-3-2(8) (Burns Code Ed. Repl. 1997) (" 'physical custody' means actual possession and control of a child"); I.C. 31-9-2-67 (Burns Code Ed. Repl.1997) (" 'Joint legal custody' ... means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training"). The use of the term "joint custody" on one page, along with an indication that Wife was to be the "custodial" parent, is consistent with an agreement of joint legal custody.

Wife also claims that the statutory definition of joint custody, to which Wife agreed in the signed notes, and the terms of the unsigned agreement are in conflict with regard to the duty to inform the other parent of a medical emergency. This too was addressed in our earlier opinion. Indiana Code 31-9-2-67 states that parents with joint custody share authority in matters involving "health care." The term "health care" at the very least encompasses notifying the other parent regarding medical emergencies concerning the child. *See Reno, supra*, 734 N.E.2d at 1099.

---

1. This is an apparent reference to the Henry County visitation guidelines.

Wife's last claim is that the agreement fails to meet the requirement imposed by A.D.R. 2.7(E)(2), i.e., that the agreement be reduced to writing. Wife's former attorney testified that certain terms, such as those providing for the division of home-care expenses, were agreed to by the parties during mediation. These terms are not included in the signed notes; therefore, Wife contends that the agreement was one including both written and parol terms. Wife cites *Shrum v. Dalton* (1982) Ind.App., 442 N.E.2d 366, 370, *abrogated on other grounds by Mitchell v. Mitchell* (1998) Ind., 695 N.E.2d 920, for the proposition that "inclusion of oral terms within a written contract is sufficient to render the entire contract oral." In *Shrum,* the existence of the oral terms rendered the entire contract oral, and the contract therefore failed to satisfy the statute of frauds. *Id.*

For the first time, upon rehearing, Wife asks us to extend this rule to mediated agreements. However, Wife has waived this argument by not presenting it upon direct appeal. *See Holmes v. ACandS, Inc.* (1999) Ind.App., 711 N.E.2d 1289, 1290–91 ("Any question which has not been briefed or argued in the briefs on appeal cannot be raised for the first time in a petition for rehearing. The petition is to be confined to those issues which were properly presented in the initial appeal and which were overlooked or improperly decided." (citations omitted)).

Our earlier opinion is hereby affirmed.

BAILEY, J., and VAIDIK, J., concur.