Jo Ann SPENCER, Appellant–
Petitioner,

v.

Fred J. SPENCER, Appellee–
Respondent.

No. 87A05–0011–CV–497.

Court of Appeals of Indiana.

July 30, 2001.

John Clouse, Ivan A. Arnaez, Evansville, IN, Attorneys for Appellant.

Charles L. Martin, Boonville, IN, Attorney for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Petitioner, Jo Ann Spencer (Wife), appeals the property settlement agreement incorporated into the decree dissolving her marriage to Appellee–Respondent, Fred J. Spencer (Husband).

We reverse and remand for further proceedings.

*ISSUE*

Wife raises two issues on appeal, one of which is dispositive:

Whether the trial court properly approved a property settlement agreement entered into orally by the parties at the conclusion of mediation, but not memorialized by an executed, written document prior to Wife's repudiation of its terms.

*FACTS AND PROCEDURAL HISTORY*

On February 20, 1998, the Wife filed a Verified Petition for Dissolution of Marriage. During the course of their dissolution proceeding, the parties agreed to mediate their marital property distribution.

The mediation was conducted on October 6, 1998. After approximately three and one-half hours, it concluded with an oral agreement that the mediator dictated in the presence of the parties, who then left. The same day, the mediator prepared a written version of the agreement and faxed a copy to both parties. On October 8, 1998, the mediator reported to the trial court that "at the conclusion of mediation, an agreement was reached on all issues and proposed Decree of Dissolution was dictated in the presence of the parties and circulated to counsel for signature, the matter having been amicably resolved." (R. 53).

When Husband's counsel received the dictated Decree of Dissolution, he requested six (6) changes, none of which were substantive. The mediator incorporated

these changes and prepared a new Decree, which he mailed to parties' counsel. Wife, however, refused to execute the Decree because she did not agree with its terms. Instead, she submitted a list of additional marital property she wanted. In explaining the basis for her refusal to sign the decree, she claimed that the length of the mediation, combined with the mediator's conduct, "deprived her of the ability to make a considered judgment," and that it was her understanding that upon receipt of the written Decree, "she would have the opportunity to accept or reject the same." (R. 176).

On November 12, 1998, Husband cross-petitioned for dissolution. Six days later, he filed a Verified Motion to Enforce Agreement for Settlement and for Sanctions.

At the final hearing held December 8, 1998, instead of presenting evidence as to the marital property, its value, and the parties' respective wishes regarding distribution, the trial court heard limited testimony from the mediator and Husband's former counsel regarding the conduct of the mediation. The only evidence of marital property was testimony from another former attorney of Husband, regarding an alleged inheritance due to Husband in the range of Five to Six Hundred Dollars, which had been omitted from the proposed property distribution. Pursuant to Husband's request at the hearing, the trial court bifurcated the issues and granted Husband's cross-petition for dissolution, but took Husband's Motion to Enforce the mediated agreement under advisement. On December 10, 2000, the Court granted the Motion to Enforce by signing the Decree of Dissolution prepared by the mediator.

Wife now appeals.

## DISCUSSION AND DECISION

Wife claims the trial court erred by distributing the marital property according to the terms of the oral agreement. In dissolution proceedings, a court's distribution of marital property will not be set aside unless it is clearly erroneous or results from an abuse of discretion. "Reversal is merited only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court." *Chase v. Chase*, 690 N.E.2d 753 (Ind.Ct.App.1998). Should the parties agree to distribution of marital assets, the agreement must be signed by the parties and submitted to the court for approval and incorporation into the dissolution decree, at which time it becomes an enforceable agreement. Ind.Code § 31–15–2–17.

In the absence of an agreement, the trial court must determine an appropriate distribution. *Id.* In such a case, Ind.Code § 31–15–7–4(b) requires an equal division of the marital liabilities and assets unless the evidence demonstrates that an equal division would not be fair and reasonable. *Chase*, 690 N.E.2d at 755. To rebut the presumption, a party opposing an equal distribution must present supporting evidence. If the trial court, after hearing the evidence, determines that an equal division would not be fair and reasonable, the court must enter findings that state the reasons for deviating from the presumption. *Akers v. Akers*, 729 N.E.2d 1029, 1033 (Ind.Ct.App.2000).

Here, the trial court did not base the property distribution on either a signed agreement or after an evidentiary hearing. Instead, it adopted an alleged oral agreement reached at the conclusion of mediation, but repudiated by the Wife prior to its execution. Husband argues that the trial court correctly approved the mediated agreement despite Wife's repudi-

ation of the oral agreement. As support, he cites *Silkey v. Investors Diversified Services, Inc.*, 690 N.E.2d 329 (Ind.Ct.App. 1997), which held that an oral agreement reached at the conclusion of mediation was enforceable under the Rules of Alternative Dispute Resolution (A.D.R.), Rule 2.7(E).

In *Vernon v. Acton*, 732 N.E.2d 805 (Ind.2000), our supreme court specifically disapproved *Silkey*.[1] In *Vernon*, the defendant claimed that mediation successfully concluded with an oral agreement to settle the matter for $29,500.00. Before the agreement was put in writing, the defendant's insurance company issued a check for that amount, as well as a release form. Plaintiffs rejected both and filed suit instead. Defendant's answer included a counterclaim for breach of the alleged agreement, followed shortly by a motion to enforce. At the hearing on defendant's motion to enforce, the court allowed evidence regarding statements made during the mediation over plaintiffs' objection that such statements, having been made during mediation, were confidential.

The supreme court agreed, citing the A.D.R. Rule 2.12: "Evidence of conduct or statements made in the course of mediation is likewise not admissible." *Vernon*, 732 N.E.2d at 809. While noting that oral contracts are generally enforceable, the Supreme Court cited sound policy reasons to require that mediated agreements "be reduced to writing and signed":

> Notwithstanding the importance of ensuring the enforceability of agreements that result from mediation, other goals are also important, including: facilitating agreements that result from mutual assent, achieving complete resolution of disputes, and producing clear understandings that the parties are less

likely to dispute or challenge. Requiring written agreements, signed by the parties, is more likely to maintain mediation as a viable avenue for clear and enduring dispute resolution rather than one leading to further uncertainty and conflict. Once the full assent of the parties is memorialized in a signed written agreement, the important goal of enforceability is achieved.

*Id.* at 810.

The supreme court distinguished *Silkey* on the basis that no one disputed that an agreement had been reached; Silkey was attempting, instead, to repudiate the agreement after the fact. Here, Wife stated her belief that until she had a chance to review and sign the written agreement, it would not be binding. Furthermore, to the extent that *Silkey* conflicts with their holding in *Vernon*, the supreme court specifically disapproved it. *Id.* at n. 8.

More recently, *Reno v. Haler*, 734 N.E.2d 1095 (Ind.Ct.App.2000), relied on *Vernon* to uphold a mediated settlement agreement where, unlike here, the parties reduced their oral agreement to a written document, albeit the mediator's notes, that each party signed before leaving the mediation. The *Reno* court upheld the agreement, as written, because "[a]lthough the handwritten notes signed by the parties are in a very rough form, they do contain the terms to which the parties agreed." 734 N.E.2d at 1099.

Because the Wife testified in her affidavit that she believed the mediated settlement would not be binding until she had a chance to review and sign the written agreement, there apparently never was an agreement. Moreover, even if a valid agreement had been reached at the conclu-

---

**1.** Although the parties in *Vernon* mediated their dispute prior to initiation of legal proceedings, their mediation agreement, as well as statements made to the Court, indicated their intent to be bound by the A.D.R. Rules.

sion of mediation, it could not bind the Wife until the parties had signed it and it was approved by the trial court.

### CONCLUSION

Based on the foregoing, we conclude that the trial court incorrectly granted Husband's Motion to Enforce Agreement because the alleged agreement had not been reduced to writing, signed by the parties, and approved by the trial court. We remand for further proceedings consistent with this decision.

SULLIVAN, J., concurs.

FRIEDLANDER, J., concurs in result with opinion.

FRIEDLANDER, Judge, concurring in result.

I agree with the majority's conclusion that the trial court erred in approving the unsigned property settlement agreement. In my view, we need only look to the provisions of A.D.R. 2.7(E) in order to decide this matter. That provision provides that, in order to be enforceable, an agreement in domestic relations matters "shall be reduced to writing and signed by the parties and their counsel," A.D.R. 2.7(E)(2), and then filed with the court.

In this case, Wife did not sign the document containing the property settlement terms upon which the parties had apparently agreed following the October 6, 1998 mediation. Absent her signature, there was no enforceable agreement, and the trial court·erred in concluding otherwise. Upon this basis alone, I concur·in the result reached by the majority.