927 So.2d 949 (2006)
Lawrence FREEDMAN, Appellant,
v.
FRASER ENGINEERING & TESTING, INC., a Florida corporation; Alexander H. Fraser,; Anthony Macaluso; John Doe No. 1; John Doe No. 2; John Doe No. 3, jointly and severally; and charging lien claimant/Norman Malinski and The Law Offices of Norman Malinski, P.A., Appellees.
No. 4D04-4254.
District Court of Appeal of Florida, Fourth District.
March 15, 2006.
Rehearing Denied May 24, 2006.
*951 Amy D. Shield of Amy D. Shield, P.A., Boca Raton, and Rudolph & Leacock LLP, West Palm Beach, for appellant.
Bruce M. Levine of Bruce M. Levine, P.A., Boca Raton, for Appellees-Norman Malinski and The Law Offices of Norman Malinski, P.A.
STONE, J.
Freedman appeals a final judgment in favor of his attorney, Malinski, foreclosing an attorney's charging lien and an order denying enforcement of an alleged settlement. We affirm on the merits, but reverse, in part, and remand with instructions to the trial court to make necessary corrections to the final judgment.
Freedman sued Fraser, an engineering firm, for malpractice. Malinski appeared about ten months into litigation. A retainer agreement set forth the attorney's fee, consisting of two components  an "initialization" fee and a one-third contingent fee. The agreement called for a credit back against the $10,000 initialization fee if the attorney's fees exceeded a cap of $35,000.00.[1]
Freedman and Fraser settled their dispute for $100,000.00 after the first day of trial. The settlement was structured, providing for periodic payments. By the terms of the retainer agreement, Malinski was entitled to $33,333.33. With the $10,000.00 he had already received, his total fee would have been $43,333.33, well over the $35,000.00 cap, thus rendering Freedman eligible for a chargeback of $8,333.33. This left Freedman with a balance due to Malinski of $25,000.00. It is undisputed that this is the total sum owed.
Malinski wrote Freedman the day after settlement, articulating these details and proposing a modification of their agreement. He asked that Freedman pay him 25% from the first $20,000.00 received, but offered to defer further payment for the following eighteen months, resuming payment when the third tier of the payment schedule commenced. This arrangement would leave an unpaid balance due to Malinski at the end of term, which he stated he would accept from Freedman in one final payment.
Communication between the attorney and the client fell apart at this point. Freedman claimed that Malinski had orally agreed during settlement negotiations to defer any payment out of the first $20,000.00; Malinski claimed that he had said no such thing. Malinski filed a notice of charging lien.
Fraser's attorney, then holding the first $20,000.00 payment in escrow, interpleaded the funds into the court's registry. After quite a bit of spiteful litigation, the trial court ordered the parties to mediation.
The mediation resulted in a "proposed" settlement agreement, with the mediator's handwritten entries entered on a pre-printed form. The proposed agreement contained language relating to each party's responsibility to prepare settlement documents to conclude settlement, including mutual general releases, and voluntary dismissal of all claims with prejudice. Apparently, Malinski signed, but then decided against forwarding an executed agreement to Freedman. A flurry of correspondence between counsel for both parties ensued.
Malinski's attorney prepared a packet of documents to effect settlement. Despite much discussion, Freedman's counsel did not provide the required paperwork. After re-faxing a twenty-two page package to Freedman's attorney, still with no paperwork in return, Malinski became suspicious *952 and "saw no reason to play with Mr. Freedman." Malinski's attorney sent a letter to Freedman's attorney, claiming Freedman's conduct was an unequivocal repudiation and declaring Freedman to be in material breach.
Freedman then filed two motions: one to enforce the settlement agreement, and one to remove the case from the trial docket. The trial court denied the motion to remove and agreed to hear the motion to enforce the settlement prior to trial on the charging lien. The trial court entered its order denying Freedman's motion to enforce settlement agreement, concluding that the proposed agreement was not enforceable, as it left open essential terms.
The final hearing took place four months later; the issue remained to determine "whether there was a modification or whether the fee agreement had to be enforced in accordance with its original terms." Through the entirety of these vexatious proceedings, Fraser had been making settlement payments to its attorney in escrow. Malinski sought collection of the monies owed to him, as calculated by the court, against this fund.
Malinski took the stand and explained the structure of his fee arrangement, testifying that he was presently entitled to the full $25,000.00 plus costs. He continued by explaining that after settling with Fraser, Freedman asked him for some flexibility in fee payment from the original retainer agreement. Malinski's testimony was that his letter the following day memorialized the modification as he understood it, that Freedman responded with a series of nasty letters, and that the upshot was that the parties did not agree to the modification. Malinski expressed his belief that he was due his fee once his client, Freedman, entered into the settlement with Fraser, as opposed to when the payments were made.
Freedman testified and suggested that Malinski receive 25% of each and every payment. Although the parties agreed on the amount owed to Malinski, there remained a dispute concerning which percentage to apply in getting to that number  the 33 1/3% in the agreement, or the 25% net due from the settlement. Malinski's attorney asked for the entire $25,000.00 in one present lump sum payment or, in the alternative, a third of the monies held by Fraser's attorney and a third as the payments continued. Freedman's attorney suggested the fee be paid as 25% of escrowed funds and 25% of the income stream. Finally, Freedman complained that he had never received a proper bill.
The trial judge entered an extensive final judgment enforcing and foreclosing the charging lien, ordering Freedman to pay Malinski a third of the monies held in escrow, and a third of the payments as they continued.

Enforcement of the settlement agreement
There was substantial, competent evidence to support the trial court's conclusion that no enforceable settlement agreement between the parties was in force. The record supports the trial court's finding that the proposed agreement relied upon the drafting, mutual approval, and future execution of material documents. "Settlement agreements are not considered final when the record establishes the parties' intent to take further action prior to the completion of a binding agreement.... Where essential terms of an agreement remain open, and subject to further negotiation, there can be no enforceable contract." Dows v. Nike, Inc., 846 So.2d 595, 602 (Fla. 4th DCA 2003); see also Cheverie v. Geisser, 783 So.2d 1115, 1118 (Fla. 4th DCA 2001).
We note, also, that Florida Rule of Civil Procedure 1.730(b) requires an agreement *953 reached as a result of mediation to be reduced to writing and signed by the parties and their counsel. The proposed mediated agreement was not signed and executed by both parties and counsel. Although not raised below, this, in itself, defeats Freeman's argument. Scott v. Tischler, 882 So.2d 461, 462 (Fla. 4th DCA 2004); City of Delray Beach v. Keiser, 699 So.2d 855, 856 (Fla. 4th DCA 1997); Gordon v. Royal Caribbean Cruises, Ltd., 641 So.2d 515, 517 (Fla. 3d DCA 1994).

Foreclosure of the charging lien
The trial judge correctly ruled that the attempts to modify the initial agreement were ineffective. Further, the record supports the trial court's finding that Freedman materially breached the contingency fee agreement by refusing to pay Malinski. It contains a letter from Fraser's attorney, Hurd, who held the remitted settlement funds in escrow while waiting for Freedman's instructions to pay a portion to Malinski. Freedman argues that he did not "actually recover" the monies, but this argument is unpersuasive. Fraser remitted the monies to his attorney, Hurd, on Freedman's behalf. Malinski procured a positive settlement for Freedman, and $41,000.00 of the $100,000.00 was, thus far, placed in escrow. Freedman was not blocked from his settlement money  he just chose not to acknowledge the funds, and not to authorize disbursement. The fact that Freedman chose not to collect does not relieve him of his obligation to pay his attorney. Litman v. Fine, Jacobson, Schwartz, Nash, Block & England, P.A., 517 So.2d 88, 91 (Fla. 3d DCA 1987).
The trial court properly recognized that Malinski's right to fees accrued when the contingency occurred and is figured as a percentage of the amount recovered. Arabia v. Siedlecki, 789 So.2d 380, 382-83 (Fla. 4th DCA 2001). It erred, however, in calculating what percentage of each payment belonged to Malinski. Paying Malinski one-third of funds in escrow, followed by a third of the income stream paid to Freedman, will result in Malinski's full payment prior to Freedman's complete recovery. If Fraser ceased payments to Freedman subsequent to Malinski's full payout, this would lead to an inequitable and unanticipated result, with Malinski receiving a greater percentage of recovery than agreed to in the contract.
The record reflects how the error was made. The original contingency percentage set forth in the agreement was for 33 1/3%. However, because of the credit of the initial fee already received by Malinski, the percentage now due to the attorney became 25%. As Malinski is only eligible for one fourth of the settlement payments as Freedman receives them, this portion of the final judgment should be reversed for re-calculation of the percentage due to Malinski, both from monies in escrow and payments in future.
Further, although not argued in the trial court, we note that rule 4-1.5(f)(6), Rules Regulating the Florida Bar, specifies the following limitations when a settlement is paid out over time:
In cases in which the client is to receive a recovery that will be paid to the client on a future structured or periodic basis, the contingent fee percentage shall be calculated only on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, this limitation does not apply. No attorney may negotiate separately with the defendant for that attorney's fee in a structured verdict or settlement when separate negotiations *954 would place the attorney in a position of conflict.
Here, consistent with that rule, Malinski will receive a percentage of each payment equivalent to his earned percentage on the entire recovery.
Freedman further claims that the attorney should not be paid because he did not send the client a proper closing statement. However, even flawed contingency fee agreements can be enforceable. State Contracting & Eng'g. Corp. v. Condotte Am., Inc., 368 F.Supp.2d 1296, 1305 (S.D.Fla.2005) (citing The Florida Bar re: Amendments to The Rules Regulating the Florida Bar, 519 So.2d 971, 975 (Fla. 1987)). Malinski sent Freedman a letter including the calculation of his fee and submitted documentation to support claimed costs. The trial court did not err in enforcing and foreclosing Malinski's charging lien despite the lack of more detailed paperwork.
Accordingly, we affirm the trial court's order denying enforcement of settlement agreement. We affirm the trial court's final judgment enforcing and foreclosing the charging lien, but remand with instructions to re-calculate the amount due to Malinski out of monies collected and monies due in the future as described in this opinion. Post-judgment interest should be calculated from the date that Fraser actually tendered payment on Freedman's behalf. We affirm the final judgment as to all other points.
KLEIN, J. and REYES, ISRAEL, Associate Judge, concur.
NOTES
[1] All parties recognize certain inaccuracies contained in one section of the agreement.