IN THE SUPREME COURT
OF THE VIRGIN ISLANDS
**FILED**
March 23, 2026 01:09 PM
SCT-Civ-2025-0019
DALILA E. PATTON, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **OCEAN PEST CONTROL, LLC, and STEVE VASATURO,** | ) **S. Ct. Civ. No. 2025-0019** |
| Appellants/Plaintiffs. | ) Re: Super. Ct. Civ. No. 78/2023 (STT) |
| | ) |
| v. | ) |
| | ) |
| **HARSHA REBELLY, MEGAN ELIZABETH REBELLY, and CORRY & REBELLY, INC.,** | ) |
| Appellees/Defendants. | ) |
| | ) |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas-St. John
Superior Court Judge: Hon. Denise M. Francois

Argued: November 10, 2025
Filed: March 23, 2026

Cite as: 2026 VI 5

BEFORE:   **RHYS S. HODGE,** Chief Justice; **IVE ARLINGTON SWAN**, Associate Justice; and **HAROLD W.L. WILLOCKS**, Associate Justice.

APPEARANCES:

**Dwyer Arce, Esq.**
Kutak Rock, LLP
Omaha, NE
   *Attorney for Appellants*,

**Justin E. King, Esq., (argued)**
**Niva M. Harney-Hiller, Esq.,**
**Breana M. Khouly, Esq.**
Kennedys CMK, LLP
Miami, FL
   *Attorneys for Appellees*.

## OPINION OF THE COURT

**HODGE, Chief Justice.**

¶ 1   Ocean Pest Control, LLC, ("OPC") and Steve Vasaturo and (collectively "plaintiffs")

appeal an order of the Superior Court granting a motion filed by the appellees, Harsha Rebelly, Megan Corry, and Corry & Rebelly, Inc. (collectively "defendants"), to enforce a mediated settlement agreement. For the reasons that follow, we reverse.

## I. BACKGROUND

¶ 2    On March 7, 2023, the plaintiffs commenced a lawsuit against the defendants in the Superior Court of the Virgin Islands, which raised numerous tort claims stemming from an altercation that occurred at a business operated by the defendants. Nearly two months later, the defendants filed an answer that also asserted multiple counterclaims against the plaintiffs arising from that same incident. On July 20, 2023, the Superior Court entered an order referring the matter to mediation pursuant to Rule 90 of the Virgin Islands Rules of Civil Procedure.

¶ 3    After numerous proceedings not related to this appeal, the court-ordered mediation ultimately occurred on September 13, 2024, through the Zoom teleconferencing platform. While the mediation was not transcribed or recorded, the parties and the mediator agree that it lasted approximately seven-and-a-half hours and that nine individuals were electronically present:

(1) Vasaturo (both in his individual capacity and as representative of Ocean Pest, LLC);

(2) Harsha Rebelly (both in her individual capacity as representative of Corry & Rebelly, Inc.);

(3) Megan Corry (both in her individual capacity as representative of Corry & Rebelly, Inc.);

(4) Michael Sheesley, Esq. as counsel for the plaintiffs;

(5) Neil Goldman, Esq. as co-counsel for the defendants;

(6) Niva Harney-Hiller, Esq. as co-counsel for the defendants;

(7) Mark Miller, a representative of the defendants' insurance carrier;

(8) John Golden, Esq. as counsel for the insurer; and

(9) Andrew Capdeville, Esq. as the mediator.

Towards the end of the mediation, Attorney Capdeville placed everyone in the same virtual room, and Attorney Sheesley read aloud the terms of a mediated settlement agreement. After doing so, and while everyone was still in the common mediation room, Attorney Sheesley sent an email to Attorneys Capdeville, Goldman, Golden, and Harney-Hiller at 5:14 p.m. to memorialize the agreement in writing, which read in its entirety as follows:

1. Certain Underwriters at Lloyd's, London subscribing to Policy No. SLGLBRT2156 will pay [an agreed sum] to the escrow account of the Law Offices of Andrew Capdeville in settlement of OPC and Vasaturo's claims against Corry and Rebelly Inc, Harsha Rebelly and Megan Corry.

2. OPC/Vasaturo agrees to pay Harsha Rebelly and Megan Corry [one-half of the agreed settlement sum] in settlement of all counterclaims asserted by Harsha Rebelly and Megan Corry. This will be done by direction by OPC/Vasaturo to Capdeville to make [such] payment . . . to Goldman & Van Beek, PC.

3. Capdeville will pay [half of] the total [settlement] sum . . . to OPC/Vasaturo.

4. Vasaturo, OPC, Corry and Rebelly Inc, Harsha Rebelly and Megan Corry agree to authorize Capdeville to act as escrow agent to make the payments set forth above.

5. Mutually agreeable global releases, hold harmless, and confidentiality agreements will be signed by all parties.

6. Lawsuit will be dismissed with prejudice within 15 days of issuance of checks by Capdeville.

(J.A. 138.) Attorney Sheesley, however, did not send the email directly to Vasaturo, Rebelly, or Corry. Around this same time, both Vasaturo and Rebelly asked questions in the mediation room, which were answered by the attorneys present.

¶ 4     Within six minutes of Attorney Sheesley sending the email, all recipients replied back to say "Approved" or "Confirmed" except for Attorney Goldman, who approved the agreement

subject to OPC directing that Attorney Capdeville make payment directly to Corry and Rebelly and not to their counsel. Minutes later, both Attorney Sheesley and Attorney Capdeville wrote to agree to that stipulation. At an unspecified time shortly afterward, all nine participants exited the Zoom meeting. However, neither the mediator nor counsel for any of the parties filed a notice with the Superior Court that an agreement had been reached.

¶ 5    On September 17, 2024, Attorney Sheesley sent an email to the defendants' counsel and Attorney Capdeville stating that no settlement agreement existed because neither Vasaturo nor the defendants "signed" a settlement agreement as required by Civil Rule 90. In response, on September 20, 2024, the defendants filed with the Superior Court a motion to enforce the purported settlement agreement, which the plaintiffs promptly opposed on September 23, 2024. The Superior Court held a hearing on the motion on February 27, 2025, where it heard arguments, considered testimony, and announced that it would take the matter under advisement.

¶ 6    The Superior Court ultimately granted the defendants' motion in a March 4, 2025 order.[1] While acknowledging that Civil Rule 90 requires that both parties and their attorneys sign a mediated settlement agreement, the Superior Court determined that "[s]ubstantive common law prevails over court-created procedural rules" and thus applied substantive contract law rather than

---

[1] Prior to ruling on the merits of the motion, the Superior Court considered—and ultimately rejected—a claim made by the plaintiffs in their opposition that Civil Rule 90 establishes an absolute disclosure privilege that prevents anyone present at a mediation proceeding from providing any communications or documents made in the course of that proceeding. Specifically, the Superior Court held that while a mediation privilege exists, such privilege cannot be so absolute as to preclude a court from considering mediation communications in the context of a motion to enforce a mediated settlement agreement, since doing so "would render Rule 90(h) meaningless." (J.A. 14.) Although the plaintiffs have not challenged this portion of the March 4, 2025 order on appeal, we will ultimately address it since the privileges created by Civil Rule 90 are directly relevant to the question of whether the Superior Court must abide by the directives of Civil Rule 90(h)(2)-(3).

the provisions of Civil Rule 90. (J.A. 15.) The Superior Court determined that the elements of an enforceable contract—"offer, acceptance of that offer, and consideration"—were satisfied based on the emails between the parties' counsels and the mediator, and that Attorney Sheesley possessed the authority to bind the plaintiffs to the terms of that contract since he acted with actual or apparent authority as their agent. (J.A. 15-16.) Consequently, the Superior Court directed that the parties henceforth comply with the terms of the mediated settlement agreement as set forth in the September 13, 2024 emails. The plaintiffs timely filed their notice of appeal with this Court on April 2, 2025. *See* V.I. R. APP. P. 5(a)(1).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

¶ 7      "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court." V.I. CODE ANN. tit. 4, § 32(a); 48 U.S.C. § 1613a(d). An order that disposes of all claims submitted to the Superior Court for adjudication is final for purposes of appeal. *Alvarez v. Estate of Keel*, 2020 VI 15, ¶ 7 (quoting *Chapman v. Cornwall*, 58 V.I. 431, 436 (V.I. 2013)). Since the Superior Court's order granting the Rebellys' motion to enforce the terms of the mediated settlement foreclosed further litigation on the parties' underlying tort claims, it constitutes an appealable final judgment. *See Etienne v. Alexander*, 2020 VI 12, ¶¶ 6, 9–10 (exercising section 32(a) jurisdiction over trial court's order to enforce mediated settlement agreement); *Boynes v. Transp. Servs.*, 60 V.I. 453, 458 (V.I. 2014) (same).

¶ 8      We review the Superior Court's factual findings for clear error. *Daley-Jeffers v. Graham*, 69 V.I. 931, 935 (V.I. 2018). We review its legal conclusions *de novo*, *id.*, including its interpretation of court rules, *King v. Appleton*, 61 V.I. 339, 345 (V.I. 2014).

### B. Interaction of Procedural Court Rules and Substantive Common Law

¶ 9　The plaintiffs devote virtually their entire principal appellate brief to arguing that the Superior Court erred by failing to comply with the plain text of Civil Rule 90. They largely overlook, however, that the Superior Court did so based on a finding that "[s]ubstantive common law prevails over court-created procedural rules" and that it therefore could not adopt "a rigid application of Rule 90" if doing so meant "ignor[ing] long-established common law principles on the formation of enforceable contracts." (J.A. 15.). Specifically, the Superior Court found that the elements for creation of an enforceable contract under the common law—"offer, acceptance of an offer, and consideration"—were satisfied, and that the different or additional requirements set forth in Civil Rule 90, like the requirement that the parties and their counsel reduce their verbal agreement to writing and sign it, were essentially preempted. (J.A. 15.).

¶ 10　In their appellate brief, the defendants adopt much of the same reasoning as the Superior Court on this question, but in even stronger terms. The defendants assert that strict compliance with Civil Rule 90 would "make new law;" rewrite settled contract doctrine;" and even "violate the separation of powers." (Appellees' Br. 15-16.) Yet despite the alleged preemption of Civil Rule 90 by the common law forming a central part of both the defendants' brief and the Superior Court's March 4, 2025 order, the plaintiffs' reply brief fails to engage with these arguments, simply stating that this Court possesses rule-making authority and that the defendants "fail to appreciate the role of this Court as the court of last resort for the Territory." (Reply Br. 24.) Notably, the plaintiffs do not cite any case law or other legal authority addressing the relationship between the common law and seemingly contrary court rules.

¶ 11　Ordinarily, the failure of the plaintiffs to adequately brief the primary basis for the Superior Court's decision would require this Court to deem the claim waived and affirm the Superior

Court's judgment. *See* V.I. R. App. P. 22(m) ("Issues that . . . are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal."). However, "[t]his Court has repeatedly cautioned that parties may not, through explicit agreement or implicitly by omission, stipulate to the law." *Simmonds v. People*, 59 V.I. 480, 493 (V.I. 2013) (collecting cases). This is particularly true for "unsettled" legal issues such as those in this case, where "to follow blindly an incorrect interpretation of the law may establish a binding precedent that may unfairly and unjustifiably affect the disposition of other cases." *Garcia v. Garcia*, 59 V.I. 758, 774 (V.I. 2013). Therefore, rather than summarily affirming the Superior Court due to the plaintiffs' failure to adequately brief the question of whether Civil Rule 90 abrogates the common law of contracts, we consider it on the merits.

¶ 12     This Court has long distinguished between substantive and procedural laws.  As this Court previously explained, "[a] substantive rule of law . . . creates and defines the rights, duties, and obligations that are subsequently administered by procedural rules of law," whereas "[a] procedural rule regulates the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Gov't of the V.I. v. Durant*, 49 V.I. 366, 373 (V.I. 2008) (internal citations and quotation marks omitted). The Legislature and this Court possess concurrent authority to enact substantive and procedural rules, but through distinct processes and subject to different limitations. *See World Fresh Market, LLC v. Palermo*, 74 V.I. 455, 462 (V.I. 2021).  The Legislature may enact substantive or procedural laws through the ordinary lawmaking process, enacting statutes or other legislation that set forth the law. *Id.*  This Court, however, typically enacts procedural rules as court rules, and adopts substantive law "through exercising its inherent authority to create common law." *Id.*  Nevertheless, despite their procedural nature, our court rules indisputably "have the

*Ocean Pest Control, LLC v. Rebelly*        2026 VI 5
S. Ct. Civ. No. 2025-0019
Opinion of the Court
Page 8 of 24

force of law." *Companion Assurance Co. v. Smith*, 66 V.I. 562, 569 (V.I. 2017).

¶ 13    However, "the allocation of authority between this Court and the Legislature differs depending on whether the law enacted is procedural or substantive." *World Fresh Market*, 74 V.I. at 462. In the event of a conflict between a procedural court rule adopted by this Court and a procedural statute enacted by the Legislature, "the procedural rule adopted by this Court will always prevail." *Id*. (citing *Gerace v. Bentley*, 65 V.I. 289, 303 (V.I. 2016)). But with respect to inconsistencies between a substantive statute enacted by the Legislature and a substantive law created by this Court through common law adjudication, "a doctrine of law created by this Court must ultimately yield to the substantive statutes adopted by the Legislature." *Id.* (citing *In re L.O.F.*, 62 V.I. 655, 661 n.6 (V.I. 2015)). And, of course, a procedural rule adopted by this Court will always yield to substantive law enacted by the Legislature in the event the procedural rule purports to "materially modify a right granted by the substantive rule of law." *Durant*, 49 V.I. at 544.

¶ 14    The instant case raises a novel issue: what law prevails if a conflict arises between a procedural court rule adopted by this Court through the rule-making process and a substantive common law doctrine created by this Court through ordinary adjudication? This Court's prior precedents governing conflicts between substantive and procedural laws invoked "the doctrine of separation of powers" which "applies with respect to the coordinate branches of government in the Virgin Islands." *Id*. (quoting *Smith v. Magras*, 124 F.3d 457, 465 (3d Cir. 1997)). In other words, since the Revised Organic Act vests concurrent authority over such matters to the Legislative and Judicial Branches of the Government of the Virgin Islands, some principles of construction and preemption must exist to manage the inevitable conflicts. *Limetree Bay Terminals, LLC v. Liger*, 2024 VI 26, ¶¶ 12-13. Yet these separation of powers considerations are completely irrelevant to

the question in this case "because separation of powers implicates more than one branch of government" and thus is "not at issue" when a matter "involves only the judiciary." *State v. Palmer*, 964 N.E.2d 406, 407 (Ohio 2012). As such, the general rule that a substantive law will preempt or trump procedural rules, *see, e.g., World Fresh Markets*, 74 V.I. at 461, has no theoretical basis when the substantive law and the procedural rule in question were <u>both</u> adopted by this Court.

¶ 15    A different and more nuanced interpretive approach is necessary under these unique circumstances. We begin with the well-established rule that "principles of statutory construction apply when construing and applying court rules." *In re Plaskett*, 56 V.I. 441, 447 (V.I. 2010) (citing *Corraspe v. People*, 53 V.I. 470, 480 (V.I. 2010)). Just as "the Legislature presumably is aware of contrary common-law rules that a statute will abrogate," the "Supreme Court presumably is aware of contrary common-law rules when fashioning court rules." *Bennett v. Weitz*, 559 N.W.2d 354, 356 (Mich. Ct. App. 1997); *accord, Haynes v. Ottley*, 61 V.I. 547, 566-67 (V.I. 2014) ("[T]he Virgin Islands Legislature, when enacting a new law, is deemed to have knowledge of existing law . . . and is presumed to intend for the new law to operate in harmony with existing statutes and common law."); *Cascen v. People*, 60 V.I. 392, 403-04 (V.I. 2014) (observing that "'the legislature is presumed to know the common law before a statute is enacted'") (alterations omitted) (quoting *Gov't of the V.I. v. 19.623 Acres of Land*, 602 F.2d 1130, 1138 (3d Cir. 1979)).. Importantly, as we have previously explained, "[i]n interpreting a statute, 'it is presumed the [Virgin Islands] Legislature does not intend to change the common law, absent language so indicating,'" and that "'abrogation [of the common law] only occurs when the . . . intent to do so is plainly manifested.'" *Cascen*, 60 V.I. at 404-05 (quoting *Tyson v. People*, 59 V.I. 391, 414 (V.I. 2013) and *Kiser v. A.W. Chesterton Co.*, 736 S.E.2d 910, 917 (Va. 2013)). Accordingly, this Court

will "presume that [its rules] are consistent with the common law and [will] not presume that [it] intends to [thereby] abrogate or modify [the] common law . . . except to the extent expressly declared or clearly indicated in the [rule]." *Cascen*, 60 V.I. at 405; *see also Greer v. People*, 74 V.I. 556, 583 n.27 (V.I. 2021) (same). As such, a court should first determine the intent of this Court in enacting the court rule in question—specifically, whether this Court adopted the rule with the intent to supersede or eliminate a common law rule. In undertaking this inquiry, the Court must determine if the rule "plainly manifest[s]" such intent by "expressly declar[ing] or clearly indicat[ing it] in the [rule]." *Cascen*, 60 V.I. at 404-05. If so, that is the end of the matter. *See B.F.L. v. State*, 233 P.3d 1118, 1123 (Alaska Ct. App. 2010). But if the Court did not make its intent to abrogate or modify the common law manifest in the rule, such that its intent on the question is in doubt, then a court should interpret the common law and the court rule so as to "make[] the least change in the common law" while staying consistent with the plain text of the rule. *See In re Miller*, 15 N.W.3d 287, 292 (Mich. Ct. App. 2023). And ultimately, this Court— as the court of last resort for the Virgin Islands, being vested with the supreme judicial power of the territory and having fashioned the court rule—will possess the final word on the matter on appeal. *See Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 978-79 (V.I. 2011) (recognizing that "the supreme judicial power of the Territory" is reposed in this Court).

¶ 16    Here, it is readily apparent from the plain text of Civil Rule 90 that we did not intend to displace the common law of contracts. In fact, there is no conflict between the rule and the common law at all. Civil Rule 90, by its own clear and unambiguous language, applies only to court-ordered mediation in civil cases pending in the Superior Court. It does not purport to govern all agreements, or even all agreements arising from mediation.

¶ 17    But even more importantly, Civil Rule 90 does not purport to change the common-law

requirements for entering into a valid contract. The pertinent part of Civil Rule 90(h)(2), titled

"Agreement Reached," reads as follows:

> If an agreement is reached, it shall be reduced to writing and signed by the parties and their counsel, if any. The agreement shall be filed when required by law or by the parties' consent. If the agreement is not filed, a joint stipulation of dismissal or consent judgment shall be filed.

The defendants and the Superior Court interpret this language as creating additional elements for

entering into a settlement agreement arising from a court-ordered mediation: that the agreement

"be reduced to writing" and that it also be "signed by the parties and their counsel." But Civil Rule

90(h)(2) does not establish these as two new required elements for entering into a contract in a

court-ordered mediation. As this Court has previously instructed, one must not interpret select

portions of a court rule in isolation but rather must consider the framework established by the entire

rule, with the understanding that this Court intends to "give effect to every provision in the rule so

that no one part makes any other portion ineffective." *Fenton v. People*, 69 V.I. 889, 897 (V.I.

2018) (internal quotation marks omitted) (collecting cases).  Importantly, the very next rule—Civil

Rule 90(h)(3), titled "Enforcement of Agreement; Sanctions" provides, in its entirety, that

> In the event of any breach or failure to perform under the agreement, the court upon motion may impose sanctions, including costs, attorney's fees, or other appropriate remedies including entry of judgment on the agreement.

¶ 18    The relationship between these two portions of Civil Rule 90 is clear: if the parties enter

into a written agreement signed by the parties and their counsel and notify the Superior Court in

accordance with Civil Rule 90(h)(2), then the Superior Court may exercise authority to enforce

that agreement as part of the same civil action if a party breaches it or fails to perform.  This differs

significantly from the general procedural rule, which is that a settlement agreement is enforced

through a new cause of action for breach of contract filed as a separate complaint in the Superior

*Ocean Pest Control, LLC v. Rebelly*        2026 VI 5
S. Ct. Civ. No. 2025-0019
Opinion of the Court
Page 12 of 24

Court. *See Etienne v. Alexander*, 73 V.I. 519, 524 (V.I. 2020) ("[W]hen a trial court dismisses a case because the parties have settled, the court does not have jurisdiction to enforce the terms of the settlement agreement simply because it had jurisdiction to decide the underlying action.") (quoting *Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 402 (V.I. 2008)). It also differs from the procedural rule that applies to the rare cases where parties seek to enforce settlement agreements entered without court approval in cases that were never dismissed, where the party seeking enforcement would need to formally amend their pleadings. *See, e.g., Belniak v. Modern Day Const., Inc.*, No. 8:07-cv-256-T-24MSS, 2007 WL 9723862, at *1 (M.D. Fla. Oct. 24, 2007) (unpublished) (declining to enforce settlement in pending case where "no notice of settlement or stipulation of dismissal was filed" but acknowledging that defendants could "request leave to amend their Answer to assert the affirmative defenses of settlement, release, accord, and satisfaction" if a "requisite showing to permit leave to amend" were established); *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996) ("[A] written settlement agreement may be enforced though one party withdraws consent before judgment is rendered on the agreement. . . . Where consent is lacking, however, a court may not render an agreed judgment on the settlement agreement, but rather may enforce it only as a written contract. Thus, the party seeking enforcement must pursue a separate breach-of-contract claim, which is subject to the normal rules of pleading and proof.").

¶ 19    In other words, Civil Rule 90 does not displace the substantive common law of contracts but rather creates an additional procedural exception to allow the Superior Court to enforce the settlement agreement in the same action without the need for the parties to initiate a brand-new civil action. The parties may choose to avail themselves of this exception, or they may not. The parties could certainly come to an oral agreement in a court-ordered mediation—however, if they

fail to reduce it into writing pursuant to Civil Rule 90(h)(2), then the Superior Court cannot enforce it under Civil Rule 90(h)(3). Likewise, the parties could enter into a written agreement but fail to have it signed by the parties and their attorneys pursuant to Civil Rule 90(h)(2), which would also prevent the Superior Court from enforcing it under Civil Rule 90(h)(3). Only if the parties enter into an agreement "reduced to writing and signed by the parties and their counsel" may the Superior Court exercise its authority under Civil Rule 90(h)(3) to enforce the agreement without the parties needing to initiate a separate case.[2] *See Yaekle v. Andrews*, 195 P.3d 1101, 1106 (Colo. 2008) (explaining that the purpose of a Colorado rule nearly identical to Civil Rule 90 is so "parties can turn an agreement reached during mediation into an enforceable court order").

¶ 20    The formalities provided for in Civil Rule 90(h)(2) also directly relate to another portion of Civil Rule 90 that the parties extensively briefed in the Superior Court but have not done so on appeal: the privileges codified at Civil Rule 90(d)(8)-(9). Those rules provide, in their entirety, as follows:

> (8) **Disclosure Privilege**. Each party involved in a court-ordered mediation conference has a privilege not to disclose, and to prevent any person present at the proceeding from disclosing communications made during such proceeding.

> (9) **Inadmissibility of Mediation Proceedings**.    Any  or  all

---

[2] While not dispositive, the courts of three states that currently have or previously adopted rules nearly word-for-word identical to our Civil Rule 90—Florida, Indiana, and South Carolina—have consistently arrived at the same conclusion. *See, e.g., Gordon v. Royal Caribbean Cruises, Ltd*., 641 So. 2d 515, 516–17 (Fla. Ct. App. 1994); *City of Delray Beach v. Keiser*, 699 So. 2d 855, 856 (Fla. Ct. App. 1997); *Dean v. Rutherford Mulhall, P.A*., 16 So. 3d 284, 286 (Fla. Ct. App. 2009); *Parkland Condo. Ass'n v. Henderson*, 350 So. 3d 484, 486–87 (Fla. Ct. App. 2022); *Wells Fargo Bank, N.A. v. Richards*, 226 So. 3d 920, 921–22 (Fla. Ct. App. 2017); *Gardner v. Wolfe & Goldstein, P.A.*, 168 So. 3d 1281 (Fla. Ct. App. 2015); *Mastec, Inc. v. Cue*, 994 So. 2d 494, 495–96 (Fla. Ct. App. 2008); *Freedman v. Fraser Eng'g & Testing, Inc*., 927 So. 2d 949, 952–53 (Fla. Ct. App. 2006); *Scott v. Tischler*, 882 So. 2d 461, 462 (Fla. Ct. App. 2004); *Spencer v. Spencer*, 752 N.E.2d 661, 664–65 (Ind. Ct. App. 2001); *Vernon v. Acton*, 732 N.E.2d 805, 809–10 (Ind. 2000); *Reno v. Haler*, 734 N.E.2d 1095, 1098–99 (Ind. Ct. App. 2000); *S.C. Human Affairs Comm'n v. Zeyi Chen*, 846 S.E.2d 861, 867 (S.C. 2020).

> communications, written or oral, made in the course of a mediation proceeding, other than an executed settlement agreement, shall be inadmissible as evidence in any subsequent legal proceeding, unless all parties agree otherwise.

¶ 21     In the proceeding below, the plaintiffs asserted that the defendants violated these provisions by disclosing events that occurred in the Zoom mediation room itself as well as the emails sent during the mediation. The Superior Court disagreed, reasoning that such information needed to be disclosed to the court or otherwise it "would render Rule 90(h) meaningless." (J.A. 14.) But the reasoning employed by the Superior Court is largely circular: the Superior Court assumes that the defendants permissibly disclosed these communications despite Civil Rules 90(d)(8)-(9) because it otherwise could not exercise its enforcement authority under Civil Rule 90(h)(3). Yet that presupposes the correctness of the Superior Court's ultimate conclusion: that it could exercise enforcement authority under Civil Rule 90(h)(3) notwithstanding the parties' failure to comply with Civil Rule 90(h)(2). Importantly, Civil Rule 90(h)(2) and (3) contemplate that the parties may file a copy of their executed settlement agreement with the Superior Court and that the Superior Court may later enforce that agreement—*and the single exception to the privileges codified in Civil Rules 90(d)(8)-(9) is reliance on the executed settlement agreement.* In other words, the Superior Court adopted a construction of Civil Rules 90(h)(2)-(3) that rendered Civil Rules 90(d)(8)-(9) entirely ineffective.

¶ 22     Had the Superior Court applied the plain text of all portions of Civil Rule 90, the purpose of this procedural scheme would become readily apparent. For the mediation process to succeed, parties and their attorneys must often make statements or other concessions that, if introduced into evidence at trial or otherwise publicly disclosed, may harm their claim or defense. The mediation privileges codified in Civil Rules 90(d)(8)-(9) encourage such candor by establishing a nearly impenetrable shield against both public disclosures of such communications and their admissibility

*Ocean Pest Control, LLC v. Rebelly*        2026 VI 5
S. Ct. Civ. No. 2025-0019
Opinion of the Court
Page 15 of 24

into evidence—with the sole exception being "an executed settlement agreement." And Civil Rule 90(h)(2) requires that such an executed settlement agreement be in writing and signed both by the parties and their counsel.

¶ 23     The reason for this is clear: to implement the mediation privilege. The writing requirement of Civil Rule 90(h)(2) prevents the initiation of enforcement proceedings pursuant to Civil Rule 90(h)(3) based on a purported oral agreement entered into at the mediation, since the privileges codified in Civil Rules 90(d)(8)-(9) prohibit the parties or the Superior Court from relying on any written or oral communications made in the mediation as a basis for proving the existence of such an oral contract. As the Supreme Court of Indiana recognized in interpreting a nearly identical rule,

> This exception is noteworthy only for what is not included: oral agreements. The disadvantage of exempting oral settlements is that nearly everything said during a mediation session could bear on either whether the disputants came to an agreement or the content of the agreement. In other words, an exception for oral agreements has the potential to swallow the rule. As a result, mediation participants might be less candid, not knowing whether a controversy later would erupt over an oral agreement.

*Vernon v. Acton*, 732 N.E.2d 805, 809 (Ind. 2000) (quoting Nat'l Conf. of Comm'rs on Unif. State Laws, Uniform Mediation Act, Draft Report, Section 8, Reporter's Note 2, Subsection 8(a)(1)). Likewise, Civil Rule 90(h)(2)'s requirement that the parties and their counsel all sign the agreement also safeguards the Civil Rule 90(d)(8)-(9) privileges by preventing the need to inquire into what statements may or may not have been made with respect to an attorney's settlement authority, or what communications a party may or may not have made in the mediation that indicate their assent to a purported settlement agreement that only their lawyer signed. In other words, Civil Rule 90(d)(8)-(9) prohibited the admission of much of the evidence relied upon by

the defendants in this very case.[3]

¶ 24    It is important to emphasize again that these are all procedural limitations, and not substantive modifications to the common law of contracts. It does not mean that oral agreements, or written agreements signed only by attorneys on behalf of the parties, are never legally enforceable if the Civil Rule 90(h)(2) formalities are not satisfied. Civil Rule 90 "was not intended to carve out a space in which the common law of contracts did not operate, but rather complement those principles and provide ways for parties to streamline the enforcement of mediated agreements as court orders." *Yaekle*, 195 P.3d at 1108. If the common-law elements of an enforceable contract—"offer, acceptance of that offer, and consideration"—are present, and the parties otherwise "have a meeting of the minds" as to the terms of the agreement, then a party may sue if another party breaches that contract. *Agueda v. Marcano*, 79 V.I. 533, 544-45 (V.I. 2024). However, if the additional formalities provided for in Civil Rule 90(h)(2) are not satisfied, and no other exception to the general rule elucidated by this Court in *Etienne* exists,[4] the dissatisfied party will need (1) to either initiate a new civil action to seek redress for the breach, *see JILCO, Inc. v.*

---

[3] As noted earlier, the plaintiffs objected to the introduction of this evidence before the Superior Court as violative of the privileges codified in Civil Rules 90(d)(8)-(9), but failed to assert this as an issue on appeal. Ordinarily, "[i]ssues that were . . . raised or objected to but not briefed . . . are deemed waived for purposes of appeal, except that the Supreme Court, at its option, may notice an error not presented that affects substantial rights." V.I. R. App. P. 24(m). Although we conclude that the Superior Court erred in admitting this evidence, we do not reverse the Superior Court on this basis because the error did not affect the plaintiffs' substantial rights. As shall be explained in the following subsection, the parties' mediation communications are entirely irrelevant to the question of whether their purported agreement satisfies the formalities required by Civil Rule 90(h)(2)—namely, that the agreement "be reduced to writing and signed by the parties and their counsel."

[4] Such "narrow exceptions allowing the Superior Court to exercise jurisdiction to enforce a settlement agreement in such cases" are "(1) where the Superior Court has an independent basis for jurisdiction; (2) where the settlement contract is embod[ied] in the dismissal order; or (3) where the Superior Court expressly retains jurisdiction to enforce the agreement." *Etienne*, 73 V.I. at 524.

*MRG of South Fla., Inc.*, 162 So.3d 108, 109-10 (Fla. Ct. App. 2014) (noting that the purpose of a Florida court rule with language nearly identical to Civil Rule 90 is to "permit[] issues of enforceability of settlements to be resolved through motions filed in the pending litigation rather than requiring independent actions."), or amend its complaint, answer, or other pleading to formally raise a claim or defense based on the contract, *Mantas*, 925 S.W.2d at 658; and (2) prove its case without relying on any communications that occurred in the mediation proceeding unless all other parties agree to waive the privileges codified in Civil Rules 90(d)(8)-(9).

¶ 25    For these reasons, we conclude that the Superior Court erred in disregarding Civil Rule 90 and analyzing the defendants' motion only through the lens of the common law of contracts. At this stage, the question is not one of whether the parties entered into an enforceable contract or agreement, but whether the Superior Court possessed the authority to enforce such an agreement as part of the existing civil case without any of the parties seeking and receiving leave to amend their pleadings to assert a claim or defense based on such agreement. While the common law of contracts may inform whether the parties entered into an agreement, the Superior Court lacks enforcement authority under Civil Rule 90(h)(3) unless the agreement also satisfies the additional formalities required by Civil Rule 90(h)(2).

### C. Authority of Superior Court to Enforce Purported Agreement

¶ 26    Civil Rule 90(h)(2), by its own clear and unambiguous terms, provides that a mediated settlement agreement "shall be reduced to writing and signed by the parties and their counsel." As noted above, the mediated settlement agreement must comply with Civil Rule 90(h)(2) to permit the Superior Court to enforce it *as part of the existing action* under Civil Rule 90(h)(3). As such, all the arguments in the defendants' briefs—which largely center on whether the parties entered into a valid settlement agreement under the common law of contracts—are irrelevant to the

question of the Superior Court's enforcement authority. Even if the parties entered into an enforceable contract, the defendants cannot seek redress for a breach of that contract as part of the existing action, without amending their pleadings, if it has not been "reduced to writing and signed by the parties and their counsel." V.I. R. Civ. P. 90(h)(2).

¶ 27    Here, the defendants make no attempt at all to argue that "the parties and their counsel" all signed the purported agreement—nor can they, since it is plain on its face that Vasaturo did not. Even if we were to assume—without deciding—that an email setting forth broad terms is equivalent to a written agreement and several other emails stating only "Approved" or "Confirmed" as equivalent to a signing, the fact remains that Vasaturo and the defendants never personally signed anything. Recognizing this, the defendants, like the Superior Court below, assert that Attorney Sheesley exercised actual or apparent authority on behalf of the plaintiffs. But while lawyers act as agents of their clients and "may take such action on behalf of the client as is impliedly authorized to carry out the representation," V.I.S.Ct.R. 211.1.2(a), a lawyer cannot take any action that "belongs solely to the client," such as waiving the attorney-client privilege. *Browne v. People*, 56 V.I. 207, 235 (V.I. 2012) (collecting cases). The decision to settle a case is amongst this class of decisions that belong solely to the client. *See* V.I.S.Ct.R. 211.1.2(a) ("A lawyer shall abide by a client's decision whether to settle a matter."). This principle also necessarily extends to Civil Rule 90(h)(2): since the rule expressly requires that the agreement be "signed by the parties and their counsel," and Rule 211.1.2(a) of the Virgin Islands Rules of Professional Conduct prohibits lawyers from settling matters without their clients' consent, it is common sensical that Attorney Sheesley cannot sign on behalf of Vasaturo to fulfill the requirements of Civil Rule 90(h)(2), for to do so would literally turn the party signature requirement into a nullity with no legal effect.

¶ 28    As such, we hold that the agreement—if any—reached at the mediation does not satisfy the requirements of Civil Rule 90(h)(2), and that the Superior Court consequently lacked the authority to enforce it under Civil Rule 90(h)(3).  This does not constitute a holding by this Court that the parties did not enter into an enforceable settlement agreement at the mediation; it only means that the defendants cannot enforce such an agreement *as part of the underlying civil action and without amending their pleadings,* but must instead do so by initiating a new case in the Superior Court—and even then, they may prove their case only through respecting the privileges codified in Civil Rules 90(d)(8)-(9).  Accordingly, we vacate the March 4, 2025 dismissal order and reinstate the plaintiffs' complaint and defendants' counterclaims.[5]

### D. Mandatory Sanctions Under Civil Rule 90(f)(2)

¶ 29    Although not directly raised by the parties, we are compelled to consider another matter as part of this appeal.  "The purpose of mediation is to encourage and facilitate the resolution of a dispute by helping the disputing parties reach a mutually acceptable and voluntary agreement." *Webster v. FirstBank P.R.*, 66 V.I. 514, 519 (V.I. 2017) (internal quotation marks eliminated).  Moreover, "the purpose of court-ordered mediation is to make civil litigation more economical, efficient, and satisfactory to litigants." *McClure Lumber Co. v. Helmsman Const., Inc.*, 585 SE.2d 234, 237-38 (N.C. Ct. App. 2003); *accord*, V.I. R. Civ. P. 1 ("These rules should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").  "Importantly, the success of mediation depends largely on the willingness of the parties" to participate in the mediation process and "consider and

---

[5] In its March 4, 2025 order, the Superior Court directed the parties to cause distribution of the settlement proceeds in accordance with the purported settlement agreement.  As a condition of reinstating the parties' claims, the Superior Court should direct the parties to make the arrangements necessary to return all such settlement proceeds to the appropriate parties.

honestly assess many factors, including the strengths and weaknesses of their case." *Webster,* 66 V.I. at 520 (internal quotation marks omitted).  For this reason, Civil Rule 90 requires both the attendance and participation of the parties, their insurers, and, if a party is an entity rather than an individual, "a representative having full authority to settle without further consultation, or authority to make a final recommendation of settlement to the appropriate decision-making body of the party." V.I. R. CIV. P. 90(f)(1)(A)-(C). These attendance and participation requirements are codified in Civil Rule 90 to ensure "that resulting mediations have maximum opportunities to succeed" by ensuring that everyone present has "sufficient negotiation authority" to come to an agreement.  Don Peters, *Just Say No: Minimizing Limited Authority Negotiating in Court-Mandated Mediation*, 8 PEPP. DISP. RESOL. L.J. 273, 275 (2008). When those with sufficient authority to agree to a settlement do not attend a court-ordered mediation, or attend but refuse to participate in good faith, it transforms mediation from a cost-effective way to resolve a dispute to an expensive procedural hurdle that "postpone[s] the ultimate resolution of the case . . . and, thus, prolong the litigation." *In re Atlantic Pipe Corp.*, 304 F.3d 135, 147 (1st Cir. 2002).

¶ 30     In their appellate brief, the defendants assert that the plaintiffs engaged in "gamesmanship" and "bad faith" due to Vasaturo's conduct with respect to the mediation and its aftermath, and emphasize that condoning what occurred in this case would "turn[] a rule meant to promote finality into a tool for delay and bad faith" and effectively "gut Rule 90's very purpose" by permitting a party to use their silence or non-participation at a mediation as "a get-out-of-settlement-free card." (Appellees' Br. 17, 19-20, 32.)

¶ 31     The plaintiffs respond by emphasizing that "where a party violate[s] the very rule they attempted to turn into their advantage . . . the Superior Court can effectively address it through sanctions under Rule 90(f)(2) or its inherent authority." (Reply Br. 26.) Civil Rule 90(f)(2), titled

"Failure to Appear or Mediate in Good Faith," provides, in its entirety, as follows:

> If a party, without good cause, fails to appear at a duly noticed mediation conference by a properly authorized person or representative, or if a party fails to participate in the mediation in good faith, the court <u>shall impose sanctions</u> on that party or its counsel, including an award of mediator fees and expenses as well as other parties' attorney's fees and other costs.

(Emphasis added.) Notably, unlike other rules providing for sanctions for litigation misconduct—such as Civil Rule 11(c)(1)[6]—Civil Rule 90(f)(2) does not provide that the Superior Court "may" impose sanctions, in the sense that it has the discretion to decide whether to impose them. Rather, Civil Rule 90(f)(2) mandates that the Superior Court "shall" impose sanctions, and expressly provides what those sanctions shall be: "an award of mediator fees and expenses as well as other parties' attorney's fees and other costs."

¶ 32    Indeed, the plaintiffs repeatedly state in their appellate briefs that the word "shall" as used in Rule 90 should be interpreted by this Court to "create[] an obligation impervious to judicial discretion." (Appellants' Br. 19 (quoting *In re L.O.F.*, 62 V.I. at 663).) *See Limetree Bay Terminals*, 2024 VI at ¶ 37 ("[T]he word 'shall' is mandatory and does not afford discretion."). As such, Civil Rule 90(f)(2) is clear: if a person fails to appear at a mediation, or fails to participate in the mediation in good faith, the Superior Court *must* impose sanctions on the person, and those sanctions *must* include the mediator's fees and expenses and the other parties' attorney's fees and costs.

¶ 33    Although ultimately not relevant to the Civil Rule 90(h)(2)-(3) analysis, the parties devoted much of their filings in both the Superior Court and this Court to analyzing whether Attorney

---

[6] "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."

*Ocean Pest Control, LLC v. Rebelly*       2026 VI 5
S. Ct. Civ. No. 2025-0019
Opinion of the Court
Page 22 of 24

Sheesley possessed actual or apparent authority to enter into the purported agreement on behalf of the plaintiffs. As part of their arguments that he did, the defendants asserted that Vasaturo had attended the mediation yet stood completely silent while Attorney Sheesley memorialized the terms of a settlement agreement and agreed to it. In their opposition to the defendants' motion to enforce the settlement agreement, the plaintiffs themselves submitted to the Superior Court a sworn affidavit signed by Vasaturo "under penalty of perjury," J.A. 181, that included the following assertions:

> 12. Towards the end of the mediation the lawyers began discussing the terms of a proposal to settle the lawsuit.

> 13. During that time the lawyers and I were put into a common 'zoom room'.

> **14. I immediately turned off my camera and left the presence of my computer. I did not participate in any joint discussions related to potential settlement. I did not hear any joint discussions related to potential settlement.**

(J.A. 180 (emphasis added).)[7] Vasaturo's statement that he turned his camera off but left the computer—which would give the illusion of his continued attendance to the other participants in the Zoom mediation—is perhaps a textbook example of a violation of Civil Rule 90(f)(2), both with respect to the attendance requirement and the mandate that a party mediate in good faith. While the Superior Court found one aspect of the affidavit not entirely credible due to one participant—Attorney Goldman—stating that he had observed Vasaturo on camera, the Superior Court nevertheless found that

> Attorney Sheesley wrote out the terms of the agreement and read them out loud for all participants to hear. Vasaturo did not ask his attorney to stop. Vasaturo did not vocalize any disagreement. Vasaturo did not ask to speak to his attorney privately. Vasaturo only asked a tax related question, to which his lawyer responded.

---

[7] Because the plaintiffs voluntarily disclosed this information to the Superior Court on their own accord, and the defendants did not object to such disclosure, all parties have waived any protection otherwise afforded by Civil Rule 90(d)(8)-(9) with respect to the contents of Vasaturo's affidavit.

*Ocean Pest Control, LLC v. Rebelly*        2026 VI 5
S. Ct. Civ. No. 2025-0019
Opinion of the Court
Page 23 of 24

(J.A. 11.) Moreover, it found that

> In the instant case, the Plaintiffs were present when the essential terms were read out loud by their counsel of record. Vasaturo did not object to what was read out loud but he now claims, in his Affidavit, to have left the Zoom conference without telling his attorney, and at a critical juncture.

(J.A. 16.) The Superior Court further found that "Vasaturo's actions were consistent with a litigant whose attorney was acting on his behalf and with his consent," and that as a result Attorney Sheesley's actions of "read[ing] the essential terms out loud, reduc[ing] them to writing, and then transmitt[ing] the terms via email to other counsel of record, the mediator, and coverage counsel" led everyone to believe that an agreement had been reached. (J.A. 16.)

¶ 34    In this case, the record reflects that the defendants' motion to enforce the settlement agreement also requested that the Superior Court "impose appropriate sanctions against Plaintiffs." (J.A. 101.) While sanctions pursuant to Civil Rule 90(h)(3) are not warranted because the parties' failure to comply with Civil Rule 90(h)(2) precludes the Superior Court from exercising its enforcement authority under Civil Rule 90(h)(3), it appears that Vasaturo's conduct might warrant mandatory, non-discretionary sanctions under Civil Rule 90(f)(2). Therefore, in addition to ordering the reinstatement of the plaintiffs' claims and defendants' counterclaims, we direct the Superior Court on remand to determine whether to assess against Vasaturo the mandatory sanctions called for in Civil Rule 90(f)(2).

### III. CONCLUSION

¶ 35    The Superior Court erred when it failed to apply Civil Rule 90 to this dispute after erroneously determining that it conflicted with the substantive common law of contracts. Because the parties' agreement—if any—failed to comply with the requirements of Civil Rule 90(h)(2), the Superior Court lacked the authority to enforce the agreement pursuant to Civil Rule 90(h)(3). To

*Ocean Pest Control, LLC v. Rebelly*        2026 VI 5
S. Ct. Civ. No. 2025-0019
Opinion of the Court
Page 24 of 24

the extent the parties did enter into a valid contract during the mediation, the defendants' only avenue to seek redress under that contract is to either amend their pleadings in accordance with generally-applicable procedural rules or initiate a new action in the Superior Court in a manner that complies with the privileges codified in Civil Rule 90(d)(8)-(9). Consequently, we vacate the March 5, 2025 dismissal order and direct the Superior Court on remand to reinstate all claims between the parties. In addition, because the record reflects that Vasaturo may have failed to attend a significant portion of the mediation or failed to mediate in good faith, we further direct the Superior Court determine whether to impose on him the mandatory sanctions required by Civil Rule 90(f)(2).

**Dated this 23rd day of March, 2026.**

                            **BY THE COURT:**

                            /s/ Rhys S. Hodge
                            **RHYS S. HODGE**
                            **Chief Justice**

**ATTEST:**

**DALILA PATTON, ESQ.**
**Clerk of the Court**

  **By:**   /s/ Jahkyda Coakley
                **Deputy Clerk II**

  **Dated:**  March 23, 2026